UNITED STATES of America, Appellee,

v.

Oscar RUDAS, Juaquin Munoz Agudelo, Defendants,

Appeal of Jose Elmer GIRALDO, Defendant.

No. 1134, Docket 89–1645.

United States Court of Appeals, Second Circuit.

Argued May 1, 1990.

Decided June 5, 1990.

for defendant-appellant Jose Elmer Giraldo.

Before LUMBARD, FEINBERG, and WINTER, Circuit Judges.

LUMBARD, Circuit Judge:

Jose Elmer Giraldo appeals from a judgment of conviction and sentence entered on December 4, 1989 (Mukasey, J.). After a two-day trial, a jury convicted Giraldo on September 22, 1989 of conspiracy to distribute, and to possess with intent to distribute, more than 500 grams of cocaine in violation of 21 U.S.C. § 846 (1988) and of possessing with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B) (1988). Giraldo argues that the Government used its peremptory challenges to exclude potential jurors of like Hispanic ancestry in violation of the equal protection principles enunciated in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Because Giraldo's counsel said nothing in response to the Government's explanations for its peremptory challenges, we deem the objection waived and conclude, in any event, that the Government made sufficient race-neutral explanations of its challenges. Accordingly, we affirm.

During jury selection on September 20, 1989, Giraldo and the Government began exercising their peremptory challenges after all jurors challenged for cause had been excused. Giraldo and the Government both exercised the maximum peremptory challenges authorized by Fed.R.Crim.P. 24(b), Giraldo ten and the Government six. Two of the six jurors challenged by the Government had Hispanic last names: Aponte and Colon. Giraldo's counsel stated:

> Judge, for the record I would like to raise at this time that out of 6 peremptory challenges the government used 2 to excuse 2 out of 3 Hispanic surnamed persons in this panel. The law I don't think requires them to have excused all of them. I think it makes out at least a question of whether they are using their peremptory challenges incorrectly to

David B. Fein, Asst. U.S. Atty., S.D.N.Y., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Kerri Martin Bartlett, Asst. U.S. Atty., S.D.N.Y., of counsel), for appellee.

Lynne F. Stewart, New York City (Geoffrey S. Stewart, New York City, of counsel)

deny this Hispanic defendant of a fair consideration by persons of the same minority group that he is a member of. The Court then invited the Government to respond. Assistant U.S. Attorney David B. Fein explained that Edwin Aponte had previously served on a hung jury in a state criminal trial and, during jury selection in this case, was or appeared to be sleeping. Fein explained that Steven Colon had "fought with a police officer and mentioned the police officer using unnecessary violence against him." Nothing more was said by the parties or the court concerning the Government's peremptory challenges. The jury ultimately included one Hispanic, Jose Rolon. The court then informed the parties that it would give the jurors preliminary instructions, let them eat lunch, and then swear them in. The court asked, "[I]s that okay?" Defense counsel answered, "Fine." She never moved for a mistrial based on the Government's peremptory challenges, never asked for reinstatement of Aponte and Colon, never pressed the court to rule on the Government's peremptory challenges, and never disputed the Government's explanations.

At trial, the evidence showed that on Thursday, March 16, 1989, Giraldo met with a woman named Rosalba Lopez on Houston Street in Manhattan. Unbeknownst to Giraldo, Lopez was a confidential informant working for the Drug Enforcement Administration ("DEA"). The two agreed that on the following Monday, March 20, Giraldo would sell Lopez a kilogram of cocaine for $18,000 in front of Katz' Delicatessen on Houston Street. Giraldo gave Lopez a sample, which subsequent analysis proved to contain 1.341 grams of 85% pure cocaine.

As arranged, Giraldo met Lopez on March 20, got into Lopez' car, and told her that the cocaine had not yet arrived. Giraldo then left the car for an apartment building on Allen Street and returned shortly, telling Lopez that the cocaine would arrive in thirty minutes. Giraldo returned to the building, then left and went to a Chevrolet parked on Allen Street. He entered the Chevrolet empty-handed and emerged holding a box, which he took into Lopez' car. Giraldo opened the box and showed Lopez the cocaine. Lopez then left the car to get the payment out of the trunk. At the trunk, she gave a pre-arranged signal to DEA agents who had been surveilling the transaction. The agents arrested Giraldo and seized the box, which contained 1004 grams of 85% pure cocaine. The agents also seized small amounts of 88% pure cocaine from Giraldo's person.

Giraldo presented no defense. The jury convicted him on both counts of the indictment. On December 4, 1989, the district court imposed a sentence of concurrent 72-month terms of imprisonment.

On appeal, Giraldo's counsel, who had represented him at trial, argues primarily that the Government's explanations were a pretext for discriminatorily using its peremptory challenges against Hispanic veniremen. She argues that Aponte's membership in a hung jury and his apparent dozing were not sufficient reasons to overcome a *Batson* challenge and that Colon never claimed to be the victim of "unnecessary" police force. She also faults the district court for not ruling on either her initial objection or the Government's explanations.

■ In *Batson*, the Supreme Court ruled that the prosecution's use of peremptory challenges in a racially discriminatory manner violates the equal protection clause. A defendant, it stated, can make out a prima facie case of such discrimination in three steps:

[T]he defendant must first show that he is a member of a cognizable racial group ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Avery v. Georgia*, 345 U.S. [559,] 562, [73 S.Ct. 891, 893, 97 L.Ed. 1244 (1953) ]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

476 U.S. at 96, 106 S.Ct. at 1723. *See also United States v. Ruiz,* 894 F.2d 501, 505–06 (2d Cir.1990). Hispanics are a cognizable group for purposes of the first step of the *Batson* inquiry. *United States v. Alvarado,* 891 F.2d 439, 443–44 (2d Cir.1989). When a defendant makes a prima facie showing, the burden shifts to the Government to offer a race-neutral explanation for its peremptory challenges. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723. We need not review the Government's explanation unless "the group alleged to have been impermissibly challenged is 'significantly underrepresented' in the jury that convicted the appellant." *United States v. Alvarado,* 891 F.2d at 445 (quoting *Roman v. Abrams,* 822 F.2d 214, 229 (2d Cir.1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 1311, 103 L.Ed.2d 580 (1989)).[1]

Once the Government has offered reasons for its peremptory challenges, defense counsel must expressly indicate an intention to pursue the *Batson* claim. Here defense counsel did nothing. She could have moved for a mistrial, moved to reinstate the excluded jurors, or otherwise indicated her continuing objection. The failure of Giraldo's counsel to make any response to the Government's explanation of its two peremptory challenges indicated to the court that she no longer disputed the propriety of the Government's challenges. By failing to dispute the Government's explanations, she appeared to acquiesce in them. As a result, there was no need for the district judge to make a ruling.

Even assuming that Giraldo's counsel made out a prima facie showing of discrimination and that Hispanics were significantly underrepresented on the convicting jury, we hold that the Government's explanations were race-neutral and sufficient. Aponte's service on a hung jury was a legitimate reason for striking him. *See Ruiz,* 894 F.2d at 506–07 (upholding Government's challenge of a minority juror "because of his participation in two prior cases that resulted in hung juries"). In addition, the Government's concern about a juror's inattentiveness is a good reason for

its exercising a peremptory challenge. *See United States v. Biaggi,* 853 F.2d 89, 96 (2d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989) (upholding Government's challenge of minority jurors based on demeanor).

The challenge to Colon was based on Colon's description during *voir dire* of his altercation with a police officer during a police sweep. Colon admitted that he was drunk at the time and stated that the officer pushed him. Colon then told the court, "I said, 'You didn't have to push me,' and he hit me with his billy club and I didn't hit him back." This exchange shows that Colon believed the officer had used "unnecessary" force. The Government had a basis for believing that Colon might be prejudiced against law enforcement officers and thus not be an impartial juror. An explanation offered by the Government for peremptorily challenging a potential juror "need not rise to the level justifying exercise of a challenge for cause." *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723.

Affirmed.

---

1. Federal criminal defendants may make *Batson* claims under the equal protection component of the due process clause of the fifth amendment.

*See United States v. Leslie,* 813 F.2d 658, 659 (5th Cir.1987) (in banc).