Sammy L. CLARK, Plaintiff–Appellant,

v.

NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY; Amalgamated Local No. 451, United Plant Guard Workers of America, Defendants–Appellees.

No. 90–2361.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 7, 1991.

Decided June 19, 1991.

Patricia Watkins Fromal, Patricia W. Fromal, P.C., Newport News, Va., for plaintiff-appellant.

Hill B. Wellford, Jr., Hunton & Williams, Richmond, Va., argued (Mark L. Heinen, Gregory, Moore, Jeakle, Heinen, Ellison & Brooks, Detroit, Mich., Avery T. Waterman, Jr., Patten, Wornom & Watkins, William C. Bell, Newport News Shipbuilding and Dry Dock Co., Newport News, Va., on brief), for defendants-appellees.

Before SPROUSE, Circuit Judge, CHAPMAN, Senior Circuit Judge, and COPENHAVER, District Judge for the Southern District of West Virginia, sitting by designation.

COPENHAVER, District Judge:

The prime issue in this appeal is whether the district court properly determined that appellant's state-law negligence claims against his employer for wrongful discharge as a result of his failure to pass a drug-screen test and against his union for negligent representation after his discharge are preempted by § 301 of the Labor Management Relations Act (LMRA). Appellant also claims plain error with respect to appellees' use of peremptory challenges to exclude blacks from the jury panel, errors in evidentiary rulings at trial, error in the court's amendment of the pretrial order to exclude negligence issues, and error in the court's failure to instruct on negligence issues. Finding no error in the record below, we affirm.

I.

Appellees Newport News Shipbuilding & Dry Dock Co. (Newport News or Shipyard) and Amalgamated Local No. 451, United Plant Guard Workers of America (Union), which represented appellant, were parties to a collective-bargaining agreement giving Newport News the right to test and discharge employees for the use of controlled substances without medical prescription.[1]

---

1. The collective-bargaining agreement contains the following provisions with respect to testing for controlled substances:

ARTICLE 37
CONTROLLED SUBSTANCES
*Section 37.1.* The Company continues to retain the right to test employees for the use

The agreement also established a final and binding grievance and arbitration procedure for the resolution of disputes under the agreement, with a provision that the Union may, but need not, submit unresolved grievances to arbitration.[2]

In September 1987, Clark was instructed to take a physical examination to become qualified for a raise. Thereafter, on September 22, 1987, a urine sample was obtained from Clark but the Shipyard's laboratory personnel deemed it unsuitable for drug screening because the temperature was too cool, indicating that the specimen was not freshly voided. A second specimen submitted on the same day and another one submitted on September 30, 1987, were rejected for the same reason.

On October 22, 1987, Clark was required to produce a specimen in the presence of a clinic employee to assure that it was his specimen and freshly voided. When tested by an Emit Drug Screen test, the presence of marijuana was detected. A confirmatory analysis performed by the National Health Laboratories in Vienna, Virginia, also revealed the presence of marijuana at a level of 36 nanograms per milliliter. Unbeknownst to the Shipyard until after this action was commenced, on that same date Clark submitted a second urine sample to an independent laboratory for analysis. The independent laboratory also detected the presence of marijuana.

On the basis of the positive drug-screen test administered at the instance of the employer, Clark was discharged on October 29, 1987. On that same date, he filed a grievance protesting his discharge. The Union unsuccessfully processed his grievance up to the stage of arbitration but declined to submit the dispute to arbitration, primarily on the basis of three prior arbitration decisions upholding the right of Newport News to discharge employees who tested positive for illegal drug use.

Thereafter, Clark brought suit in the Circuit Court for the City of Newport News against Newport News for wrongful, negligent and malicious discharge following a drug test and against the Union for negligent representation in processing his grievance after discharge. The action was removed to federal court where appellant's motion to remand was denied on the grounds that his state-law claims were preempted by § 301 of the LMRA.

The jury panel included three blacks. All were excluded by peremptory strikes exercised by the appellees without objection by appellant. Clark appeals from a verdict in favor of appellees.

## II.

Appellant Clark argues that the district court erred in holding that his state-law negligence claims are preempted by federal law. Appellant frames his action against Newport News as one for negligence in failing to use proper drug-testing procedures and accurately maintain test results, proximately resulting in his wrongful discharge. The action against the Union is presented as one in negligence for failure to prevent the use of improper testing procedures in the formation and enforcement of the collective-bargaining agreement and failure to challenge prior arbitration decisions upholding terminations of Newport News' employees under the drug-testing provisions of the agreement.

of controlled substances. For purpose of this Article 37, "Controlled Substances" shall be any narcotic, depressant, stimulant, hallucinogen or cannabis as defined by the United States Department of Justice, Drug Enforcement Administration.

*Section 37.2.* Any employee whose test results reveal the presence of a controlled substance as defined in Section 37.1 above shall be subject to immediate discipline up to and including discharge, unless such controlled substance was properly prescribed to the employee by a licensed medical or dental professional.

2. The collective-bargaining agreement provides that "[a]ny disputes, or complaints regarding the application of this Agreement may be resolved through the grievance procedure. The grievance procedure shall serve as the exclusive means to resolve any such disputes or complaints." Art. 11, Grievances, § 11.1. If the dispute is not resolved through the grievance procedure, "[t]he International Representative shall be empowered to settle, withdraw or appeal the grievance to arbitration...." *Id.* at § 11.2.

Section 301 of the LMRA expresses a federal policy, mandated by Congress, that federal law be applied in addressing disputes arising out of labor contracts. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985) (quoting *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957)). In furtherance of the federal policy, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," the claim is preempted by federal law. *Id.* at 220, 105 S.Ct. at 1916. The only exception is where state law proscribes the conduct or confers "nonnegotiable ... rights on employers or employees independent of any right established by contract." *Id.* at 212, 105 S.Ct. at 1912. However, if the state-law rights and obligations have no independent existence and can be waived or altered by private agreement, they are preempted by the agreement. *Id.* at 213, 105 S.Ct. at 1912. In other words, where "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract" and "state tort law purports to define the meaning of the contract relationship, that law is pre-empted." *Id.* Moreover, the contractual rights and obligations assumed by the parties in a collective-bargaining agreement extend beyond those expressly stated and include implied rights of reasonable performance and the duty to act in good faith. *Id.* at 214–17, 105 S.Ct. at 1912–14. Consequently, deciding whether a party acted reasonably and in good faith in carrying out a right or obligation under the collective bargaining agreement requires a reference to the contract and an interpretation of its provisions, thereby invoking § 301 preemption. *Id.* at 218–19, 105 S.Ct. at 1914–15.

■ No Supreme Court decision to date has specifically addressed whether a claim arising out of an employer's drug testing program is preempted by § 301. However, several circuit courts of appeals have held that employee claims for wrongful disciplinary action arising out of the employer's rights under a collective bargaining agree-ment to test for possible drug usage are preempted by § 301, leaving the grievance procedure as the employee's sole remedy. *E.g., Jackson v. Liquid Carbonic Corp.,* 863 F.2d 111 (1st Cir.1988), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989) (employee's statelaw claim for invasion of privacy where employer unilaterally initiated drug testing program under broad "management rights" clause giving it "the right to post reasonable rules and regulations" held preempted); *Utility Workers of America v. Southern Calif. Edison Co.,* 852 F.2d 1083 (9th Cir.1988), *cert. denied,* 489 U.S. 1078, 109 S.Ct. 1530, 103 L.Ed.2d 835 (1989) (employees' claim that employer's unilateral initiation of drug-testing program under general collective-bargaining rights was violation of state constitutional rights to privacy and freedom from unreasonable search and seizures held preempted); *(Strachan v. Union Oil Co.,* 768 F.2d 703 (5th Cir.1985) (employees' allegations that employer's drug testing under agreement giving employer right to require medical examinations where physical condition of employee at work was in doubt gave rise to various state-law tort claims for disciplinary action when they were suspended for suspected drug use held preempted).

As the court explained in *Jackson,* the validity of the state-law claims cannot be determined without an interpretation of what is reasonable under the labor contract. In addition, as a third-party beneficiary under the contract, the employee's expectations as to his rights are dependent upon union concessions during contract negotiations. So long as the employer acted within his contractual rights, the claims cannot be evaluated without reference to the contract for a determination of whether the employer's actions were reasonable under the contract, taking into account the " 'expectations of the parties' " in light of the provisions of the agreement. *Jackson,* 863 F.2d at 119 (quoting *Lueck,* 471 U.S. at 217, 105 S.Ct. at 1914).

Appellant cites to no independent state law or public policy regarding drug testing standards or procedures in the private em-

ployment sector that create rights or obligations beyond those which can be the subject of a private agreement. Rather, the rights of Clark and Newport News with respect to drug testing can be resolved only by reference to the collective-bargaining agreement and its express and implied provisions. Consequently, Clark's state-law claims against Newport News are substantially dependent upon an analysis of the rights and obligations embodied in Article 37 of the collective-bargaining agreement and they are preempted by § 301. Accordingly, the district court's ruling on that issue should be affirmed.

■ Appellant's cause of action against the Union for its conduct in processing his grievance is properly characterized as a claim of unfair representation. *See Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Kirby v. Allegheny Beverage Corp.,* 811 F.2d 253, 256 (4th Cir.1987). The duty of fair representation being a statutory duty arising under federal labor laws [3] and having as its basis the union's position as the exclusive bargaining representative of the employees and the exclusive agent for enforcement of the collective-bargaining agreement, it is necessarily defined by reference to federal law. *Vaca,* 386 U.S. at 177, 87 S.Ct. at 909–10. Inasmuch as appellant's claim that the Union negligently failed to represent him after his discharge must be determined by reference to federal law, the district court correctly determined that the claim for negligent representation is preempted.

■ Appellant's additional contention that the Union owed him an independent state-law fiduciary duty to insure that Newport News' drug-testing procedures were proper, thereby invoking the exception to the preemption rule for rights that are independent of the labor contract, must also fail. Any duty a union owes its members is a duty arising out of the collective-bargaining agreement and its express and implied obligations. *United Steelworkers of America v. Rawson,* —— U.S. ——, 110 S.Ct. 1904, 1901–11, 109 L.Ed.2d 362 (1990); *International Bhd. of Elec. Workers v. Hechler,* 481 U.S. 851, 860–62, 107 S.Ct. 2161, 2167–68, 95 L.Ed.2d 791 (1987). Consequently, in order to point to a duty beyond the duty of fair representation, the employee must be able to identify specific language in the agreement creating an additional obligation or right. *Rawson,* 110 S.Ct. at 1912. The nature and scope of the assumed duty being necessarily defined by the labor contract, it is preempted by federal law.

To the extent, then, that the Union had a duty to Clark with respect to Newport News' drug-testing practices, the nature and scope of the duty could be resolved only by reference to specific provisions of the collective-bargaining agreement defining the Union's obligations to Clark and Clark's right to enforce them. *See Rawson,* 110 S.Ct. at 1912. Inasmuch as the collective bargaining agreement does not contain specific provisions under which the Union assumes the obligation of insuring its members that Newport News' drug-testing program will be conducted in a particular manner, Clark has failed to demonstrate that the Union owed him any duty beyond that of fair representation.[4]

### III.

Appellant, who is black, claims that the district court committed plain error in failing to prevent Newport News and the Union from using peremptory challenges to remove all blacks from the jury panel, notwithstanding appellant's failure to timely raise the objection. In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90

---

3. A claim for unfair representation is essentially an unfair labor practice claim under § 8(b) of the NLRA; however, it may be properly joined with a § 301 claim against an employer for wrongful discharge under the collective-bargaining agreement. *Vaca,* 386 U.S. at 186–88, 87 S.Ct. at 914–15.

4. In light of our affirmance of the district court's determination that appellant's state-law negligence claims are preempted by § 301, further discussion of appellant's contention that the court erred in preventing the case from going to the jury on negligence issues even though negligence issues were stated in the pretrial order, is not warranted.

L.Ed.2d 69 (1986), the Supreme Court held that it is a violation of the equal protection clause of the United States Constitution for the prosecutor in a criminal case to "challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." [5] *Id. Batson* goes on to outline a detailed procedure to be followed, including a challenge to the exclusions and a making of a prima facie case of purposeful discrimination, followed by a shifting of the burden to the state "to come forward with a neutral explanation for challenging black jurors." *Id.* at 96–98, 106 S.Ct. at 1722–24. As part of his prima facie case, the complaining party must show facts and circumstances that "raise an inference" that the use of peremptory challenges was for the purpose of excluding jurors on account of their race.[6] *Id.* at 96, 106 S.Ct. at 1722–23.

 Some courts have extended *Batson* to civil cases. *E.g., Dunham v. Frank's Nursery & Crafts, Inc.,* 919 F.2d 1281 (7th Cir.1990); *Fludd v. J.B. Dykes,* 863 F.2d 822 (11th Cir.1989); *cf. Reynolds v. City of Little Rock,* 893 F.2d 1004 (8th Cir.1990) (limiting the application of *Batson* in civil cases to instances where the government is the litigant exercising the peremptory challenge). *Contra Edmonson v. Leesville Concrete Co.,* 895 F.2d 218 (5th Cir.1990) (en banc) (limiting the application of *Batson* to criminal cases). Nonetheless, appellant's claim of plain error must fail. Neither *Batson* nor its progeny suggests that it is the duty of the court to act *sua sponte* to prevent discriminatory exclusion of jurors. Rather, even in criminal cases, the objection is deemed waived if not timely raised. *United States v. Ratcliff,* 806 F.2d 1253, 1256 (5th Cir.1986), *cert. denied,* 481 U.S. 1004, 107 S.Ct. 1625, 95 L.Ed.2d 199 (1987); *Virgin Islands v. Forte,* 806 F.2d 73, 76 (3d Cir.1986) (*Batson* does not require that "allowance of race-based challenges should be declared plain error" when not preserved by objection); *see Ford v. Georgia,* —— U.S. ——, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991) (a state "requirement that any *Batson* claim be raised not only before trial, but in the period between the selection of the jurors and the administration of their oaths, is a sensible rule" and does not contravene *Batson* inasmuch as *Batson* itself did not "'formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges'" (quoting *Batson,* 476 U.S. at 99, 106 S.Ct. at 1724), or "decide when an objection must be made to be timely"); *see also Powers v. Ohio,* —— U.S. ——, ——, 111 S.Ct. 1364, 1374,

5. The *Batson* requirement that the objecting defendant and the excused prospective juror be of the same race was eliminated by the United States Supreme Court in *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). In *Powers,* the Supreme Court held that "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race." 111 S.Ct. at 1366.

6. In order to "raise the inference" of purposeful discrimination under *Batson,* it is necessary to do more than merely show that prospective jurors who are of a minority race were excluded by peremptory challenge without an obviously valid reason. *United States v. Allison,* 908 F.2d 1531, 1538 (11th Cir.1990); *United States v. Young–Bey,* 893 F.2d 178, 180 (8th Cir.1990); *United States v. Ratcliff,* 806 F.2d 1253, 1256 (5th Cir.1986), *cert. denied,* 481 U.S. 1004, 107 S.Ct. 1625, 95 L.Ed.2d 199 (1987). It is held that additional facts and circumstances supporting the inference of discrimination must be identified before the burden of establishing a prima facie case of discriminatory purpose has been met. *Allison,* 908 F.2d at 1538; *Young–Bey,* 893 F.2d at 180. However, the showing of "a 'pattern' of strikes against black jurors included in the particular venire" is a relevant circumstance that "might give rise to an inference of discrimination." *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723.

Inasmuch as we do not reach the merits of appellant's claim because of his failure to make a timely objection, we need not determine whether the exclusion of all three blacks from the jury panel is a "pattern" which, standing alone, would suffice to raise the necessary inference of purposeful discrimination and shift the burden to appellees to offer a neutral explanation for the peremptory challenges. Moreover, the record before us does not contain a transcript of the jury voir dire and, consequently, it is not possible to ascertain whether there was an obviously valid reason for the appellees' exercise of peremptory challenges against any or all of the prospective black jurors.

113 L.Ed.2d 411 (1991) (trial courts are to develop rules "permit[ting] legitimate and well-founded objections to the use of peremptory challenges as a mask for race prejudice"); *United States v. Rudas,* 905 F.2d 38 (2d Cir.1990) (defendant's failure to "expressly indicate an intention to pursue the *Batson* claim" and dispute the government's explanation for its peremptory challenges deemed a waiver of the objection). Appellant's assertion of plain error cannot be supported and he is foreclosed from raising the issue here because of his failure to timely object.[7]

### IV.

■ Four evidentiary rulings at trial are cited as error. Appellant claims error in the admission into evidence of three arbitration decisions upholding the discharge of Newport News employees terminated for positive drug-screen tests. Clark's claim against the Union, being a claim for unfair representation, *see supra,* p. 938, requires proof that the Union's conduct in representing him in the grievance procedure was "arbitrary, discriminatory or in bad faith." *Vaca,* 386 U.S. at 190, 87 S.Ct. at 916 (citing *Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)). The Union does not breach its duty of fair representation "merely because it settled the grievance short of arbitration." *Id.* at 192, 87 S.Ct. at 918. The three prior arbitration decisions involving Newport News' discharge of other shipyard employees for positive drug tests were introduced to show that the Union did not act arbitrarily or in bad faith in declining to process Clark's grievance to arbitration. The decisions were clearly relevant for that purpose and the district court did not abuse its discretion in permitting their admission.

■ With respect to the claim that the district court abused its discretion in permitting Newport News to call an expert witness not identified in the pretrial order, appellant cannot claim surprise inasmuch as the judge conducting the pretrial conference advised appellant that he would be allowed to call an expert witness not identified during discovery on the condition that appellees would then be permitted to call their own expert to counter that testimony. In addition, after appellees' expert testified, appellant was allowed to call a previously unidentified rebuttal expert, thereby diminishing any prejudice that did occur.

■ Appellant's claim of error with respect to the court's refusal to permit cross-examination about the production of the chain-of-custody log is also without merit. Appellant failed to demonstrate that production of the log was requested, or that he lacked the opportunity to compel its production after it was identified in discovery depositions, or that there was any validity to a chain-of-custody challenge in view of the parties' pretrial stipulation that the urine samples tested were those of Clark. Consequently, the district judge did not abuse his discretion in prohibiting cross-examination of the witness in the presence of the jury on the question of document production and in holding that appellant was not prejudiced by the earlier reference to the log during testimony.

Appellant's claim of error with respect to the admission into evidence of a non-contemporaneous narrative of clinical personnel explaining the circumstances surrounding Clark's drugscreen testing is not supported by the record, which reveals that the narrative was introduced as part of stipulated exhibit No. 8 and, further, that counsel agreed to its admission after cross-examining one of its preparers at length. Appendix at 158.

The judgment of the district court is affirmed.

AFFIRMED.

---

7. In light of our holding that appellant did not properly preserve the issue for appeal, it is un-necessary for us to decide whether this court would extend *Batson* to civil cases.