**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GARRY DAVIS,
<u>Plaintiff-Appellant,</u>

v.

BALTIMORE GAS AND ELECTRIC
COMPANY,
<u>Defendant-Appellee.</u>

No. 97-1600

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Joseph H. Young, Senior District Judge.
(CA-95-3807-Y)

Argued: September 24, 1998

Decided: November 23, 1998

Before MURNAGHAN and HAMILTON, Circuit Judges,
and MAGILL, Senior Circuit Judge of the
United States Court of Appeals for the
Eighth Circuit, sitting by designation.

_____

Affirmed by published opinion. Judge Murnaghan wrote the opinion,
in which Judge Hamilton and Senior Judge Magill joined.

_____

**COUNSEL**

**ARGUED:** Steven John Potter, Baltimore, Maryland, for Appellant.
Ronald McGlenn Cherry, MCGUIRE, WOODS, BATTLE &
BOOTH, L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:**

Mark T. Hackman, Barbara A. Gaughan, BALTIMORE GAS &
ELECTRIC, Baltimore, Maryland, for Appellee.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

Plaintiff Garry O. Davis filed a complaint in the United States Dis-
trict Court for the District of Maryland, Northern Division, alleging
that Defendant Baltimore Gas and Electric Company discharged him
from employment because he had filed a complaint with the Equal
Employment Opportunity Commission. Defendant contends that
Plaintiff was discharged from employment due to his refusal to per-
form a work assignment and an overall record of poor performance.
After the jury was selected for trial, Plaintiff, through his attorney,
made a motion under Edmonson v. Leesville Concrete Co., 500 U.S.
614 (1991), challenging Defendant's allegedly racially discriminatory
use of its peremptory strikes. The district court denied the motion, and
the jury was duly sworn.

Pursuant to the jury verdict, the district court issued an Order enter-
ing judgment in favor of Defendant on the retaliatory discharge claim.
Plaintiff filed a timely notice of appeal, requesting review of the dis-
trict court's ruling on his Edmonson motion. We affirm the district
court's denial of Plaintiff's motion.

I.

Plaintiff Garry O. Davis ("Davis") filed a complaint in the United
States District Court for the District of Maryland, Northern Division,
alleging that Defendant Baltimore Gas and Electric Company
("BGE") discharged him from employment because he had filed a
complaint with the Equal Employment Opportunity Commission.
Defendant contends that Plaintiff was discharged from employment
due to his refusal to perform a work assignment and an overall record
of poor performance. The matter proceeded to trial.

Jury selection commenced on March 24, 1997. The district court
(Young, J., presiding) conducted a voir dire examination of the

2

venire. At the conclusion of the examination, the court gave Plaintiff and Defendant an opportunity to provide challenges for cause. After both parties made motions to strike certain potential jurors for cause, the district court provided Plaintiff and Defendant with a list of twelve prospective jurors and a list of six prospective alternate jurors. Each party was allowed to strike three jurors from the list of twelve, and two from the list of six. Defendant used two of its three strikes to eliminate the only two possible black jurors from the pool. No black jurors were selected for the jury.

After the jury was selected, Plaintiff made a motion under Edmonson v. Leesville Concrete Co., 500 U.S. 614 (1991). Plaintiff's counsel stated that Plaintiff was African-American; no African-Americans were on the jury; and two African-Americans on the venire had not been "reached." The district court denied the motion. Plaintiff then inquired whether the court was going to ask Defendant to give racially neutral reasons for its peremptory strikes of African-Americans from the venire. The court responded,"[t]hey strike whoever they want. They strike just like you have." The court then denied Plaintiff's motion.

Defendant then volunteered racially neutral reasons why the African-American veniremen were stricken. Defendant maintained that the first juror was employed by a large organization, and defense counsel wanted to avoid jurors who might find themselves similarly situated to Davis. The second juror, Defendant argued, had a "blank profile," which prevented defense counsel from drawing any conclusions about him. Counsel indicated that he did not"want to take the chances with him." After Defendant's proffer, Plaintiff made no further attempt to show pretext or purposeful discrimination and sought no additional relief from the court. The jury was duly sworn.

Pursuant to the jury verdict, the district court issued an Order entering judgment in favor of Defendant on the retaliatory discharge claim. Plaintiff now appeals the district court's denial of his motion challenging Defendant's allegedly racially discriminatory use of its peremptory strikes.

We affirm the district court ruling.

3

II.

A trial court's determination regarding the exercise of a peremptory challenge for allegedly racially discriminatory reasons is accorded great deference on appeal. See Hernandez v. New York, 500 U.S. 352, 364-365 (1991). The court of appeals reviews the trial court's determination for clear error. See id. at 369; Jones v. Plaster, 57 F.3d 417, 421 (4th Cir. 1995). To find "clear error," the evidence must be "such that a `reviewing court on the entire evidence [would be] left with the definite and firm conviction that a mistake ha[d] been committed.'" Hernandez, 500 U.S. at 369.

An attorney typically is entitled to exercise peremptory challenges for any reason related to the outcome of the case to be tried. See Batson v. Kentucky, 476 U.S. 79, 89 (1986). In Batson v. Kentucky, however, the Supreme Court determined that the Equal Protection Clause forbids a prosecutor from challenging potential jurors ". . . solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." Id. at 89. The defendant, the Court asserted, has "the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." Id. at 85-86.

The Court created, in Batson, a 3-step burden-shifting scheme for proving racial discrimination in jury selection. First, the party challenging the strikes must establish a prima facie case showing that the opposing party exercised the peremptory challenges on the basis of race. See id. at 96-97. Once a prima facie case is established, the burden shifts to the party exercising the strikes to provide a racially neutral explanation for removing the jurors in question. See id. at 97-98. Finally, once a neutral explanation is presented, the complaining party must prove purposeful discrimination. See id. at 98. A movant may show purposeful discrimination by demonstrating that the opposing party's explanation is mere pretext for racial discrimination. See United States v. McMillon, 14 F.3d 948, 953 (4th Cir. 1994); United States v. Joe, 928 F.2d 99, 102 (4th Cir.), cert. denied, Baylor v. United States, 502 U.S. 816 (1991).

The Supreme Court applied the Batson analysis, which pertained to criminal prosecutions, to jury selections for civil suits in Edmonson

4

v. Leesville Concrete Co., Inc.. 500 U.S. at 618-630. The petitioner in Edmonson sued Leesvile Concrete Co., alleging that the company's negligence had caused him personal injury. During voir dire, Leesville used two of its three peremptory challenges to remove black individuals from the prospective jury. Id. at 616. The Supreme Court determined that, although the conduct of private parties usually lies beyond the Constitution's scope, Leesville's exercise of peremptory challenges was pursuant to a course of state action and was therefore subject to constitutional requirements. Id. at 620-628. Consequently, a private litigant in a civil case may not use peremptory challenges to exclude jurors on account of race. Id. at 630.

Combined, Batson and Edmonson govern the case at bar. Appellant has failed to satisfy the requirements of the two cases. Typically, a movant must first establish a prima facie case by showing that (1) opposing counsel has exercised peremptory strikes to remove members of a cognizable racial group from the venire;* and (2) the facts and any other relevant circumstances raise an inference that counsel used the strikes to exclude the venirepersons from the jury on account of their race. See Batson, 476 U.S. at 96. In the present case, however, the preliminary question of whether the party disputing the peremptory strikes has established a prima facie case of discrimination is moot, since Defendant voluntarily offered racially neutral reasons for its strikes. In Hernandez v. New York, the Supreme Court determined that "[o]nce a prosecutor has offered a race-neutral explanation for peremptory challenges, and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing of intentional discrimination becomes moot." 500 U.S. at 359.

Fourth Circuit law endorses the Supreme Court's holding in Hernandez. Prior to the Court's pronouncement in Hernandez, the Fourth Circuit held that when racially neutral reasons are proffered, it is unnecessary to determine whether a prima facie case was actually

_____

*Under the formulation established in Batson, the defendant needed to show that he was a member of the same cognizable racial group as the stricken venireperson. 476 U.S. at 96. In Powers v. Ohio, however, the Supreme Court discarded the requirement of racial identity between the defendant and venireperson. 499 U.S. 400, 411-417 (1991).

5

demonstrated. See McMillon, 14 F.3d at 952 n.2, citing United States v. Lane, 866 F.2d 103, 105 (4th Cir. 1989); see also Matthews v. Evatt, 105 F.3d 907, 918 (4th Cir.), cert. denied, Matthews v. Moore, 118 S.Ct. 102 (1997); United States v. Skeeter , 989 F.2d 496 (4th Cir. 1993) (per curiam). So, since Defendant volunteered racially neutral reasons for its strikes, the prima facie determination is moot. The court of appeals simply assumes the existence of a prima facie case.

Also, by volunteering its racially neutral reasons for removing the jurors in question, BGE satisfied the second step of the Batson-Edmonson scheme -- namely, the production of a nondiscriminatory explanation for the use of its strikes. BGE need only offer a legitimate reason for exercising the strikes, i.e., one that does not deny equal protection. See Jones, 57 F.3d at 420. The explanation need not rise to the level of justifying exercise of a challenge for cause. See McMillon, 14 F.3d at 952. During the trial, BGE explained that one juror worked for a large organization, and it wanted to avoid seating jurors so similarly situated to Davis. The other juror in question, BGE maintained, had a "blank profile," and Defendant did not wish to risk the uncertainty. The reasons advanced by Defendant are both legitimate and nondiscriminatory.

After Defendant's proffer of racially neutral reasons, the record reveals no further comment on the matter, which is the crux of the case before us. Plaintiff made no attempt to satisfy the third step in the Batson-Edmonson scheme. The burden is on the party alleging discriminatory selection of the venire to prove the existence of purposeful discrimination, see Batson, 476 U.S. at 93, yet when faced with BGE's presentation of a seemingly race-neutral explanation, Plaintiff stood mute -- effectively abandoning his Batson-Edmonson challenge.

While the Fourth Circuit has not previously addressed the question presented here, we now follow the lead of other circuits that have held that the movant's failure to argue pretext constitutes a waiver of his initial objection. In Hopson v. Fredericksen, for example, the plaintiff charged that the defendant's use of his peremptory strike was racially motivated. 961 F.2d 1374, 1376 (8th Cir. 1992). The defendant advanced presumably racially neutral reasons for striking the black venireman, but the plaintiff made no attempt to rebut the proffered

6

explanation. The Eighth Circuit determined that by failing to pursue his Batson objection, the movant failed to preserve the issue for appeal. See id. at 1378.

Similarly, in United States v. Rudas, the defendant argued that the Government used its peremptory challenges to exclude potential jurors of Hispanic ancestry, in violation of the equal protection principles enunciated in Batson. 905 F.2d 38, 39 (2nd Cir. 1990). The Government provided adequate race-neutral explanations for its strikes, and nothing more was said by the parties or the trial court on the matter. See id. at 40. The Second Circuit held that "[b]ecause [defendant's] counsel said nothing in response to the Government's explanations for its peremptory challenges, we deem the objection waived ...." Id. at 39. The court of appeals continued, "[o]nce the [nonmovant] has offered reasons for its peremptory challenges, [the movant] must expressly indicate an intention to pursue the Batson claim." Id. at 41; cf. Clark v. Newport News Shipbuilding and Dry Dock Co., 937 F.2d 934, 940 (4th Cir. 1991) (citing United States v. Rudas favorably). Following the lead of the Eighth and Second Circuits, we hold that Plaintiff waived his Batson challenge by failing to pursue his objection once Defendant offered a legitimate, nondiscriminatory explanation.

Appellant argues that the trial court made no findings of fact and stated no rationale for its decision that BGE had properly exercised its peremptory strikes. See Jones, 57 F.3d at 421 (noting that "when the district court fails to articulate its findings, remand for further proceedings may be necessary"). While we strongly suggest that trial judges make on-the-record rulings articulating their reasons for overruling a Batson objection, the district court is not required to make such a ruling where the movant fails to pursue the objection after racially neutral reasons are given. Here, Davis' failure to respond to BGE's explanation for its strikes could have been reasonably construed by the trial judge as Plaintiff's agreement that the expressed reasons were racially neutral. See Hopson, 961 F.2d at 1378; see also Rudas, 905 F.2d at 41 (noting that failure of counsel to respond to non-movant's explanation of its peremptory challenges indicated to court that she no longer disputed propriety of challenges). By failing to dispute BGE's explanations, Davis appeared to acquiesce in them.

As a result, there was no need for the trial judge to make a more precise on-the-record ruling. See id. at 41.

The court has no obligation to guide the movant, step-by-step, through the requirements of his own objection. Cf. Clark, 937 F.2d at 939 ("Neither Batson nor its progeny suggests that it is the duty of the court to act sua sponte to prevent discriminatory exclusion of jurors."). Rather, the court need only afford the party an opportunity to establish pretext. See Joe, 928 F.2d at 103 ("the court ... provide[s] the defendant with the opportunity to establish pretext ...") (emphasis added). The burden remains with the movant to demonstrate purposeful discrimination, i.e., that the jurors were stricken on account of their race. See McMillon, 14 F.3d at 953 ("[t]he burden thus lay with [movant] to show both that these reasons were merely pretextual and that race was the real reason for the strike").

We do confess some concern regarding the trial judge's response to Plaintiff's inquiry as to whether the court was going to request that Defendant provide racially neutral reasons for the strikes. The court replied, "[t]hey strike whoever they want." The comment is especially troubling given its remarkable similarity to comments uttered by the trial judge in Batson. In Batson, after counsel requested a hearing on his motion to discharge the jury on the ground that the prosecutor's removal of the black venirepersons violated the petitioner's rights, the trial judge noted that the litigants could use their peremptory challenges to "strike anybody they want to." Batson, 476 U.S. at 83. Indeed, as Batson now dictates, litigants cannot use their challenges to "strike anybody they want to." We fear that the trial judge's breach in the case at bar threatens to tarnish the court's integrity, which the Supreme Court in Batson aimed to avoid. See id. at 99 ("public respect for our criminal justice system and the rule of law will be strengthened if we ensure that no citizen is disqualified from jury service because of his race"); see also Edmonson , 500 U.S. at 628 ("Race discrimination within the courtroom raises serious questions as to the fairness of the proceedings conducted there. Racial bias mars the integrity of the judicial system and prevents the idea of democratic government from becoming a reality."). While the lower court's statement is distressing, we are comforted by the fact that the breach was later corrected by Defendant's voluntary proffer of a racially neutral

8

explanation. We do pause, however, to remind the lower court of its important role in preserving the integrity of the federal court system.

III.

In conclusion, we find nothing in the record to suggest that the district court's determination is clearly erroneous. Accordingly, we affirm.

AFFIRMED

9