| STATE OF LOUISIANA | * | NO. 2025-KA-0427 |
| VERSUS | * | COURT OF APPEAL |
| JERMEIL YOUNG | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 556-490, SECTION "E"
Judge Rhonda Goode-Douglas
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *
(Court composed of Judge Sandra Cabrina Jenkins, Judge Rachael D. Johnson,
Judge Karen K. Herman)

Jason R. Williams
DISTRICT ATTORNEY
Brad Scott
ASSISTANT DISTRICT ATTORNEY
619 South White Street
New Orleans, LA 70119

      COUNSEL FOR STATE/APPELLEE

Christopher A. Aberle
LOUISIANA APPELLATE PROJECT
P.O. Box 8583
Mandeville, LA 70470-8583

      COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**MARCH 13, 2026**

Defendant, Jermeil Young ("Defendant"), appeals the district court's denial

of his *Batson* challenge, finding that the State's reason for peremptorily striking a

prospective juror was race-neutral and not pretextual. For the following reasons,

we affirm the district court's judgment.

## FACTS AND PROCEDURAL HISTORY

The facts of the underlying offense are not relevant for resolving the issue

raised on appeal.

During *voir dire*, a prosecutor (Ms. Kissinger) asked the prospective jurors if

they could vote to find Defendant guilty for first-degree rape knowing that the

sentence was life in prison without parole:

> MS. KISSINGER:
> So, you know that the charge in this case is first degree rape. The
> sentence for first degree rape by law is mandatory life in prison.
> That's without benefit of parole or probation or suspension of
> sentence. So, if you believe beyond a reasonable doubt that the
> defendant is guilty of this crime, then the sentence is mandatory life.
>
> Now let me be very clear, you don't get to determine sentence, right? .
> . . Your job is [to] determine[] guilty or not guilty. That's it. But the
> law says that you need to know the charges [sic] what the defendant is
> facing if you find him guilty.
>
> So, we have to talk about how you feel about that. . . . [K]nowing that
> it's a mandatory life sentence, does that change your mind?

1

Most prospective jurors answered directly. The following exchange occurred between the prosecutor and a particular juror, "Juror Fourteen":

MS. KISSINGER:
Okay. Juror number fourteen.

JUROR NUMBER FOURTEEN:
Just point of clarification.

MS. KISSINGER:
Sure.

JUROR NUMBER FOURTEEN:
So, if proven guilty, if we say guilty, it's a mandatory sentence. If we say not guilty is their sentencing obviously — no?

MS. KISSINGER:
It's a good question. It's a good question. So, the law says we have what's called responsive verdicts. So, the law says if you don't believe, if you believe that he's guilty of first-degree rape, then your verdict should be not guilty — I mean, should be guilty. But if you don't believe that he's guilty of first-degree rape then but you believe he's guilty of second-degree rape then you can vote guilty to second degree rape. And it goes down. There's a series of charges that you may feel fit better. Okay? So, that's always an option. But the question is specifically, and the state intends to prove that he's guilty of what he is charged. So, if we prove that, can you vote guilty?

JUROR NUMBER FOURTEEN:
I'm also assuming that well, if selected obviously we will have the option to choose second degree, third degree, first degree or whatever is that a part of the option?

MS. KISSINGER:
There are responsive verdicts.

JUROR NUMBER FOURTEEN:
Right, sure.

JUDGE GOODE-DOUGLAS:
And let me just make it clear. Mr. Fourteen, you will not know the sentences of the responsive, okay?

JUROR NUMBER FOURTEEN:
Sure, sure.

2

JUDGE GOODE-DOUGLAS:
The only reason why you're knowing this is just because the law allows the state and the defense to question you about life without benefit sentence.

JUROR NUMBER FOURTEEN:
Sure, but we'll be responsible for saying this is second degree or —

JUDGE GOODE-DOUGLAS:
Yes.

JUROR NUMBER FOURTEEN:
— Okay.

JUDGE GOODE-DOUGLAS:
You'll have the opportunity to, you'll be presented with some responsive verdicts, okay?

JUROR NUMBER FOURTEEN
Thank you. Then, yes.

MS. KISSINGER:
Okay. Thank you.

Directly after, the prosecutor probed a different juror, "Juror Thirteen":

MS. KISSINGER:
Juror number thirteen.

JUROR NUMBER THIRTEEN:
I feel like fourteen kind of clarified some questions I had. So, yes.

MS. KISSINGER:
Okay. So, if we prove guilt to you first degree rape, can you convict of first-degree rape knowing that the sentence is life?

JUROR NUMBER THIRTEEN:
Yes.

Later, in chambers, the State exercised a peremptory strike of Juror Fourteen based on the aforementioned exchanged:

MS. KISSINGER:
There's, let's see — yeah, so there's a couple we'd like to talk to. Number one is — well, the first one is number fourteen. He never would answer the question about whether or not he could vote guilty

3

as charged. He did say that if he had other options, he could vote. But he never would say whether or not he could vote with the first-degree rape.

JUDGE GOODE-DOUGIAS:
Okay. I think I kind of went over it with him, but we can call him back.

The State called Juror Fourteen back in chambers to clarify his position:

MS. KISSINGER:
We talked about the life without probation, without the benefit of probation, parole benefits. And you seemed, you said you were unsure initially if you could vote if you believed the state proved its case beyond a reasonable doubt —

JUROR NUMBER FOURTEEN:
Sure.

MS. KISSINGER:
— you weren't sure if you could vote guilty as charged on the first-degree rape. You did say that you would be fine with the responsive, but the question is if we proved that he is guilty of first-degree rape, can you find, can you vote guilty?

JUROR NUMBER FOURTEEN:
Yes.

MS. KISSINGER:
You can?

JUROR NUMBER FOURTEEN:
Yes.

MS. KISSINGER:
Okay.

The State exercised peremptory strikes against five black male prospective jurors, including Juror Fourteen. This left only one black male juror on the petit jury. The State used its two remaining peremptory strikes against a white female prospective juror and black female prospective juror.

Based on the fact that five of the seven peremptory strikes were against black male prospective jurors, counsel for Defendant (Mr. Zagory) lodged an

objection based on *Batson v. Kentucky*, 476 U.S. 79, 106 (1986), which held that peremptory strikes based on race or gender are unconstitutionally discriminatory.

> MR. ZAGORY:
> Judge, I'm going to raise a *Batson* challenge. Looking at the state's seven strikes, I'm counting up five of them are black men. As a result of that, there's only one remaining black man left on this jury. And that is, as far as I was able to perceive it, that is the security guard who works a[t] [a prosecutor's] children's school. By my count . . . five of the seven strikes are black men with only one remaining black male on the jury.

The State then provided race-neutral reasoning for its peremptory challenges. For Juror Fourteen, the State explained that his response to whether he could convict of first-degree rape knowing the mandatory life without parole sentence was "not solid enough"; he only affirmed that he could find Defendant guilty after confirming that there would be responsive verdicts.

> MS. KISSINGER:
> So, [Juror Fourteen] was unsure on [life without benefit of parole]. And although he said that he could, it was only after he learned that there confirmed that there were responsive [verdicts] that could be found on. And so, because of that we felt that his response on [life without benefit of parole] was not solid enough for us to keep him.

Counsel for Defendant did not challenge the State's reasoning. The court found that the State provided race-neutral and valid reasons:

> JUDGE GOODE-DOUGLAS:
> Okay. All right. So, at this time, the court is going to find that the state has provided valid reasons for their strikes of the individuals that Mr. Zagory has noted were stricken by the state in regard to what he believes to be based upon their race. The court does believe that the state has provided race neutral and valid reasons for the rationale behind them using their peremptory strikes on those individuals. And so, I will deny the *Batson* challenge; however, I will note your objection for the records.

Following a four-day trial, a jury found Defendant guilty as charged of four counts of first-degree rape. On April 7, 2025, Defendant filed motions for post-verdict judgment of acquittal and for new trial. He asserted, in part, that the district

5

court's finding that the State provided a "satisfactory" race-neutral reason for striking Juror Fourteen was "prejudicial error." The judge denied these motions at the April 16, 2025 sentencing hearing and sentenced Defendant to four concurrent life sentences.

## STANDARD OF REVIEW

"A reviewing court owes the district judge's evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous." *State v. Turner*, 2016-1841, p. 51 (La. 12/5/18), 263 So. 3d 337, 374 (citing *Hernandez v. New York*, 500 U.S. 352, 364, (1991); *Batson*, 476 U.S. at 98, n.21). Therefore, this Court should sustain the district court's ruling on the *Batson* objection unless it is clearly erroneous.

## APPLICABLE LAW

"An exercise by the state of its peremptory strikes to remove potential jurors from the venire panel solely on the basis of race or gender violates the Equal Protection Clause of the United States Constitution." *State v. Crawford*, 2014-2153, p. 27 (La. 11/16/16), 218 So. 3d 13, 30 (citing *Batson*, 476 U.S. at 89-90). The Louisiana Supreme Court adopted this holding in *State v. Collier*, 553 So. 2d 815 (La. 1989); the holding has also been codified in Louisiana law under La. C.Cr.P. art. 795.

The Louisiana Supreme Court has articulated how courts are to analyze a *Batson* challenge:

> The United States Supreme Court in *Batson* and the cases that followed has provided a three-step process to guide courts in evaluating a claim of racial discrimination in jury selection:
>
> > (1) An opponent of the strike must make a prima facie showing that a peremptory challenge has been exercised on the basis of race;

6

(2) if the requisite showing has been made, the proponent of the strike "must demonstrate that 'permissible racially neutral selection criteria and procedures have produced the monochromatic result;'" and

(3) in light of the parties' submissions, the trial court must determine if the "[the opponent of the strike] has established purposeful discrimination."

The burden of persuasion never shifts from the opponent of the strike. However, after the opponent of the strike establishes a prima facie case of racial discrimination, the burden of production shifts to the proponent of the strike to articulate race-neutral reasons for its use of peremptory challenges.

*State v. Jones*, 2017-0658, pp. 5-6 (La. 10/22/19), 285 So. 3d 1074, 1078 (alteration in original) (citations omitted).

Under step one of a *Batson* analysis, to make a prima facie case of discrimination, the challenging party must establish: (1) that the prosecutor's challenge was directed at a member of a cognizable group; (2) that the challenge was peremptory rather than for cause; and (3) circumstances sufficient to raise an inference that the prosecutor struck the prospective juror on account of race. *State v. Williams*, 2013-0283, p. 16 (La. App. 4 Cir. 9/7/16), 199 So. 3d 1222, 1232 (citing *State v. Nelson*, 2010-1724, pp. 9-10 (La. 3/13/12), 85 So. 3d 21, 29).

For step two of a *Batson* analysis, "if a prima facie showing of discrimination is made, the burden shifts to the proponent of the strike to articulate a race-neutral explanation for the challenge." *Nelson*, 2010-1724 at p. 9, 85 So. 3d at 29. "[T]he trial court must then determine if the opponent of the strike has carried the ultimate burden of proving purposeful discrimination." *Id.* "The *Batson* explanation does not need to be persuasive, and unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race-neutral." *State*

*v. Bender*, 2013-1794, p. 4 (La. 9/3/14), 152 So. 3d 126, 129 (quoting *State v. Elie*, 2005-1569, p. 5 (La. 7/10/06), 936 So. 2d 791, 795).

Regarding step three of a *Batson* analysis, the Louisiana Supreme Court has explained:

> [T]he proper inquiry in the final stage of the *Batson* analysis is not whether the State has disproved the existence of purposeful discrimination suggested by the defendant's prima facie case; rather, the question is whether the defendant's proof, when weighed against the prosecutor's proffered "race-neutral" reasons, is strong enough to persuade the trier-of-fact that such discriminatory intent is present.

*Id.* (quoting *State v. Green*, 1994-0887, p. 29 (La. 5/22/95), 655 So. 2d 272, 290). "Thus, while the State is only required to offer a reason for the strike, the defendant raising a *Batson* challenge must establish proof of discriminatory intent." *Id.*, 2013-1794 at p. 5, 152 So. 3d at 129.

> **[T]he focus of the *Batson* inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes.** The trial court should examine all of the available evidence in an effort to discern patterns of strikes and other statements or actions by the prosecutor during *voir dire* that support or reject a finding of discriminatory intent. Because the factual determination pertaining to intentional discrimination rests largely on credibility evaluations, the trial court's findings are entitled to great deference by the reviewing court.

*State v. Tilley*, 1999-0569, p. 5 (La. 7/6/00), 767 So. 2d 6, 13 (emphasis added) (citations omitted).

## DISCUSSION

On appeal, Defendant argues that the district court erred in denying his *Batson* challenge. Specifically, Defendant argues that "because the State used six of its seven peremptory strikes on black jurors, five of whom were male, and because the reasons given for the strike of at least one of those jurors was

8

contravened by the record, this Court should vacate the conviction and remand for a new trial."

The State argues that the district court properly found that it provided race-neutral reasons for striking Juror Fourteen as well as the other black male prospective jurors. Additionally, the State asserts that Defendant's failure to dispute the State's race-neutral reason in the district court constituted waiver of the claim.

Defendant does not challenge the State's grounds for removing any other prospective jurors, so we will pretermit discussion of the State's rationale in striking them. It is only relevant that the court found those reasons to be valid and race-neutral. Nonetheless, in his brief to this Court, Defendant argues that the State's choice to strike five black male prospective jurors was discriminatory.

Defendant cannot rely on the mere fact that the petit jury ultimately included only one black male juror to illustrate that striking Juror Fourteen was discriminatory. This Court has summarized the jurisprudence concerning reliance on statistics to illustrate a prima facie case of discrimination:

> The jurisprudence thus holds that bare statistics alone, without any context, are insufficient to support a prima facie case of discrimination. This is because "the value of numbers alone, without any indication of the race or gender composition of the jury selected or the pool from which it was drawn, is limited at best."

*Williams*, 2013-0283 at p. 20, 199 So. 3d at 1235 (citations omitted). In *Williams*, this Court further noted that "[t]here is no magic number of challenged jurors which shifts the burden to the government to provide a neutral explanation for its actions." *Id.* (quoting *United States v. Chinchilla*, 874 F. 2d 695, 698 (9th Cir. 1989)). Thus, the fact that the State peremptorily struck multiple other black male

prospective jurors from the petit jury is insufficient to show that striking Juror Fourteen was discriminatory.

In furtherance of his argument that the State's reasoning for striking Juror Fourteen was pretextual, Defendant points to the response of Juror Thirteen. Defendant argues that Juror Thirteen, who was female, "adopted" Juror Fourteen's answer, and the State's failure to use a peremptory strike against her on the same grounds as Juror Fourteen evidences discrimination.

We find that Juror Thirteen did not "adopt" Juror Fourteen's answer. Rather, she simply explained that Juror Fourteen's questions provided her clarification. Unlike Juror Fourteen, Juror Thirteen did not hesitate in stating that she could find Defendant guilty knowing the mandatory sentence.

Contrastingly, Juror Fourteen only acquiesced that he could vote to find Defendant guilty once the prosecutor made clear that there would be responsive verdicts. He asked the judge and prosecutor if the jurors would "be responsible for saying this is second degree," and when the judge responded "You'll have the opportunity to, you'll be presented with some responsive verdicts, okay?" He replied "Thank you. **Then, yes**." (Emphasis added). This phrasing creates the reasonable inference that Juror Fourteen's affirmative answer was conditional on the option of having responsive verdicts (which may not carry the same mandatory life sentence).

Indeed, the State later asked Juror Fourteen in chambers to clarify his stance, at which point he stated that he could vote to convict Defendant guilty knowing the mandatory sentence. However, this occurred after he already verified that there would be responsive verdicts. He initially hesitated in his response and only assented after learning of the responsive verdicts. Comparatively, his fellow

10

prospective jurors gave direct responses as to whether they could vote to convict Defendant knowing the mandatory sentence. Juror Fourteen's initial hesitation, in the context of the other prospective jurors' direct and confident responses, serves as a valid and race-neutral reason for the State to strike him.

The court found that the State's decision to strike Juror Fourteen did not indicate an intent to exclude him because of his race. Counsel for Defendant did not challenge the State's race-neutral explanation at trial, neither during *voir dire* nor in chambers when following up with Juror Fourteen. The United States Fifth Circuit has held that "a defendant waives objection to a peremptory challenge by failing to dispute the prosecutor's explanations" in district court. *United States v. Arce*, 997 F. 2d 1123, 1127 (5th Cir. 1993) (citing *United States v. Rudas*, 905 F. 2d 38, 41 (2d Cir. 1990)).[1] So, Defendant has waived his right to challenge the State's race-neutral explanation at this stage of the proceeding.

The decision of the district court must be given great deference and cannot be reversed unless it is clearly erroneous. The facts here do not indicate that the district court was clearly erroneous in accepting the State's race-neutral reasoning for peremptorily striking Juror Fourteen.

---

[1] In *Rudas*, the United States Second Circuit found, in pertinent part:

> Once the Government has offered reasons for its peremptory challenges, defense counsel must expressly indicate an intention to pursue the *Batson* claim. . . . By failing to dispute the Government's explanations, [defendants] appeared to acquiesce in them.

905 F. 2d at 41 (alteration in original).

## CONCLUSION

Finding that the State produced valid, race-neutral reasons for using a peremptory strike against Juror Fourteen, we affirm the district court's decision to deny Defendant's *Batson* challenge.

**AFFIRMED**