**PENROD DRILLING COMPANY and American International Underwriters, Petitioners,**

v.

**Larry P. JOHNSON and Director, Office of Worker's Compensation Programs, U.S. Department of Labor, Respondents.**

No. 89–4876
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 6, 1990.

Joe E. Basenberg, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., for petitioners.

Douglass M. Moragas, Metairie, La., for Larry P. Johnson.

Lisa D. Teuberg, Jerry G. Thorn, Acting Solicitor, Dept. of Labor, Washington, D.C., for Director, Office of Worker's Compensation Programs.

Before CLARK, Chief Judge,
WILLIAMS and DUHÉ, Circuit Judges.

CLARK, Chief Judge:

Penrod Drilling Corporation and American International Underwriters (collectively "Penrod") petition this court to review an adverse order of the Benefits Review Board in favor of respondent-claimant Larry P. Johnson under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.* (the "Act"). After a 1985 hearing, an administrative law judge (ALJ) awarded benefits to Johnson for the period 1977 to 1985, but denied benefits from the date of the hearing onward because Johnson's earning capacity at the time of the hearing exceeded his pre-injury wages. The Board affirmed and modified the ALJ's order in part but reversed the finding as to Johnson's wage-earning capacity at the time of the hearing, awarding him benefits for permanent partial disability from the hearing date onward. The Board's reversal was based upon applying a conclusive presumption that Johnson's current wage established his wage-earning capacity. Because the record contains substantial evidence supporting the ALJ's finding that Johnson's post-injury earning capacity exceeded his actual wages, we reverse that portion of the Board's order awarding Johnson benefits from the hearing date onward.

## I

Johnson injured his back in 1977 while working as a roughneck for Penrod aboard an oil rig in the Gulf of Mexico. As Johnson was no longer able to work as a roughneck, Penrod agreed to pay total temporary disability benefits while Johnson attended school. Graduating magna cum laude, Johnson acquired a bachelor's degree in criminal justice administration and subsequently obtained a job as a security guard at Faulkner State Junior College in Alabama. While employed at Faulkner State, Johnson pursued and obtained a master's degree in criminal justice administration and attained the rank of chief of security by the time of the administrative hearing. Johnson filed a claim under the Act seeking permanent partial disability compensation

for loss of wage-earning capacity caused by his work-related injury.

Among the three witnesses testifying at the administrative hearing was Roger Dumars, a rehabilitation counselor appearing on behalf of Penrod. Dumars was a professor of "Counselor Education and Coordinator of Rehabilitation Counselor Education" at the University of South Alabama in Mobile. His academic credentials included both bachelor's and master's degrees in psychology, as well as a doctor of philosophy degree from the University of South Carolina in counselor education with a specialization in rehabilitation. The primary focus of Dumars' teaching was to instruct master's degree candidates in the various aspects of rehabilitating handicapped persons, including vocational rehabilitation. Dumars was also experienced in the field of job placement. He helped secure jobs for graduates of his master's program and others who were often severely handicapped. He testified that he found jobs for three to six persons a year. Dumars was certified by the National Certified Rehabilitation Counselor Organization, the National Board of Certified Counselors and was licensed by the State of Alabama as a professional counselor. He was not similarly certified by the United States Department of Labor. Over Johnson's objection, the ALJ deemed Dumars qualified as an expert in the areas of rehabilitation counseling and job placement.

Dumars testified that in his opinion Johnson's $19,000 yearly salary at Faulkner State represented an amount significantly lower than his earning capacity. Dumars based his opinion on his review of Johnson's physical limitations, academic achievements and experience as a security operative and supervisor, and on salary and job availability surveys conducted in preparation for the hearing. One survey indicated that there were "many hundreds" of security supervisor jobs in the Mobile area. Persons holding degrees in criminal justice administration with Johnson's experience earned on average between $25,000 to $27,000 per year as security managers in the private sector. The day before the hearing Dumars surveyed several companies to determine whether job openings actually existed. Employees from two firms who were willing to discuss salary ranges informed Dumars that job openings existed in their companies. Specifically, D.H. Holmes, Ltd., needed a manager for their security department and would pay between $25,000 and $28,000, depending on the applicant's experience. The applicant was required to have a bachelor's degree in criminal justice administration and experience. Gayfers Department Store also had a job available for similarly qualified applicants paying between $20,000 and $25,000 per year depending on the applicant's experience. Although other firms had current job openings, the employees with whom Dumars spoke were unwilling to discuss salary.

The ALJ found that Johnson had incurred a work-related injury causing him to be disabled within the meaning of the Act. Analyzing the nature and extent of the disability, the ALJ determined that Johnson: (1) suffered temporary total disability from September 23, 1977, the date of the injury, until June 10, 1981, the date Johnson received his bachelor's degree, entitling him to his pre-injury average weekly wage; (2) suffered permanent partial disability from June 10, 1981 through September 30, 1984, the date Johnson became chief of security at Faulkner State, the benefits to be based on the difference between his higher pre-injury average weekly wage as a roughneck and his lower weekly wage as a security officer, adjusted for inflation; and (3) suffered a permanent partial disability from October 1, 1984 through August 22, 1985, the date of the hearing, the benefits to be based on the difference between his higher weekly wage as a roughneck and his lower weekly wage as chief of security, adjusted for inflation. However, based on Dumars' testimony, the ALJ found that after August 23, 1985 Johnson's current wage at Faulkner State did not fairly and reasonably represent his wage-earning capacity. Both the Holmes and Gayfers positions were within Johnson's physical restrictions, were actual, not theoretical, and were available. The ALJ found

that the salaries paid for those positions represented Johnson's earning capacity. Since the salaries paid for those positions adjusted for inflation exceeded what Johnson had earned as a roughneck, Johnson, although still disabled from working as a roughneck, was not eligible for benefits after the hearing date.

Johnson appealed the ALJ's decision to the Benefits Review Board, claiming that the ALJ had erred in finding that his salary at Faulkner State did not fairly and reasonably represent his wage-earning capacity within the meaning of the Act. He also contended that the ALJ had miscalculated some of the benefits that were awarded. The Board agreed on both points, recalculated the benefits and reversed the ALJ's finding regarding Johnson's wage-earning capacity. The Board noted that a claimant's wage-earning capacity equals actual post-injury earnings if those earnings fairly and reasonably represent the claimant's wage-earning capacity, and that the party asserting that post-injury wages do not equal wage-earning capacity carries the burden of proof on the issue. The Board stated that a claimant's "post-injury earnings are more likely to reasonably and fairly represent the claimant's wage-earning capacity" if his current employment is "continuous and stable." Because Penrod had failed to prove that Johnson's employment at Faulkner State was not continuous and stable, Penrod failed to carry its burden of disproving that Johnson's current wage was not representative of his wage-earning capacity. Therefore, the Board concluded that Johnson's Faulkner State salary did represent his wage-earning capacity and awarded him permanent partial disability benefits from the administrative hearing date onward based on the difference between his pre-injury average weekly wage and the lower average weekly wage as chief of security at Faulkner State, adjusted for inflation.

## II

Penrod does not dispute in this court that Johnson suffers a permanent partial disability. Rather, it contends that substantial evidence supported the ALJ's findings that (1) Johnson's salary at Faulkner State at the time of the administrative hearing did not fairly and reasonably represent his true wage-earning capacity, and (2) that capacity, adjusted for inflation, exceeded his pre-injury earnings as a roughneck, thus rendering him ineligible for benefits.

## III

■ An award for permanent partial disability is based on the difference between the claimant's pre-injury average weekly wage and his or her post-injury wage-earning capacity. 33 U.S.C. § 908(c)(21). The claimant's wage-earning capacity equals his actual post-injury earnings if the earnings "fairly and reasonably" represent his wage-earning capacity. *Id.* § 908(h). If actual post-injury wages do not fairly and reasonably represent the claimant's wage-earning capacity, the claimant's wage-earning capacity may be calculated by taking into account the nature of the injury, the degree of physical impairment, the claimant's usual employment, and any other relevant factors and circumstances. *Id.* The Benefits Review Board must uphold a finding of fact, such as a claimant's wage-earning capacity, if it is supported by substantial evidence. *Id.* § 921(b)(3). A factual finding is supported by substantial evidence when the factfinder could rationally draw support for the finding from the relevant record evidence. *Cf. Owens v. Heckler,* 770 F.2d 1276, 1279 (5th Cir.1985) ("Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion.")

■ The record contains substantial evidence supporting the ALJ's findings regarding Johnson's wage-earning capacity. First, the ALJ deemed Dumars a qualified expert in the fields of rehabilitation counseling and job placement. Johnson does not dispute that conclusion here. Indeed, Dumars' academic credentials and experience in job placement amply support that conclusion.

Second, Dumars testified to reasonable conclusions based on research. The two job surveys revealed not only that security supervisor positions existed in the Mobile area paying on average $25,000 to $28,000 per year for persons having Johnson's credentials, but also that at least two such positions were open as of the day before the hearing. Dumars had studied the medical reports on Johnson's physical limitations as well as Department of Labor publications describing the general duties of security supervisors. He determined that supervisors generally perform administrative duties rather than engage in foot patrol. This was the type of work then being performed by Johnson at Faulkner State, which did not aggravate his back condition.

Based on the evidence, the ALJ reasonably concluded that security supervisor jobs existed in the Mobile area having duties compatible with Johnson's physical condition and credentials, and that these jobs paid salaries greater than Johnson's job at Faulkner State. Johnson graduated magna cum laude in his pursuit of a bachelor's degree in criminal justice administration, obtained a master's degree in the same discipline and had four year's experience as a security guard and over a year's experience as a chief of security. The jobs Dumars found required only a bachelor's degree in criminal justice administration and around four-year's experience in the field. A reasonable factfinder could conclude that Johnson was qualified for these higher-paying and available jobs.

With respect to calculating wage-earning capacity, the job openings found by Dumars paid yearly salaries of at least $20,000 to $25,000, depending on the applicant's experience. These figures are below the average paid by employers for security supervisors in the Mobile area. The ALJ therefore gave Johnson the benefit of the doubt in using these salaries as the benchmark for calculating Johnson's earning capacity. Since these salaries exceeded Johnson's actual earnings at Faulkner State, the ALJ rationally found that Johnson's actual earnings did not fairly and reasonably represent his wage-earning capacity.

Finally, because Johnson's wage-earning capacity adjusted for inflation exceeded his pre-injury earnings as a roughneck, the ALJ logically concluded that Johnson was no longer entitled to permanent partial disability benefits.

■ In reversing the ALJ, the Board held that since Penrod failed to show that Johnson's existing employment at Faulkner State was not "continuous and stable" and since the job was suitable to Johnson's physical limitations, Penrod failed to meet its burden of showing that Johnson's current wages did not fairly and reasonably represent his wage-earning capacity. We disagree. Some courts and the Board have observed that where a claimant's post-injury job is continuous and stable, the post-injury wages earned in such a job are likely to fairly and reasonably represent the claimant's wage-earning capacity. *See, e.g., Todd Shipyards Corp. v. Allan*, 666 F.2d 399 (9th Cir.), *cert. denied*, 459 U.S. 1034, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982); *Cook v. Seattle Stevedore Co.*, 21 B.R.B.S. 4, 6 (1988). Such a presumption, if unrebutted, could lead to the conclusion that actual earnings equal earning capacity. However, "[t]he findings of fact [of the ALJ] in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3). Here, instead of reviewing the record to determine whether the findings of the ALJ were supported by substantial evidence in the record, the Board conclusively presumed from its own determination of continuous and stable employment that Johnson's actual earnings equaled his wage-earning capacity. This was error. The Board's conclusive presumption not only foreclosed the rebuttal which should have been afforded, but also precluded examination of the record *as a whole*, as required by statute.

## IV

The ALJ's finding that Johnson's actual earnings did not fairly and reasonably represent his earning capacity as of the hear-

ing date is supported by substantial evidence. So is his finding that Johnson's true wage-earning capacity exceeded his pre-injury wages. Thus, as of that date, Johnson was no longer entitled to benefits under the Act for permanent partial disability. The portion of the Board's order holding to the contrary is reversed. All other aspects of the Board's order are affirmed.

AFFIRMED in part and, in part, REVERSED.