**Darnell DeBERRY, Petitioner–Appellant,**

v.

**Leonard A. PORTUONDO, Respondent–Appellee.**

No. 03–2418.

United States Court of Appeals, Second Circuit.

Argued: May 11, 2004.

Decided: April 4, 2005.

58

Richard Ware Levitt, New York, NY, for Petitioner–Appellant.

Victor Barall, Assistant District Attorney, Kings County, Brooklyn, N.Y. (Charles J. Hynes, District Attorney, and Leonard Joblove, Assistant District Attorney, on the brief), for Respondent–Appellee.

Before: WALKER, Chief Judge, OAKES and POOLER, Circuit Judges.

Chief Judge WALKER concurs in a separate opinion.

POOLER, Circuit Judge.

Darnell DeBerry seeks habeas relief based on a *Batson* claim centering on peremptory challenges to four African–American jurors. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The *Batson* Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant," *id.* at 89, 106 S.Ct. 1712, and defined a three-step process for assessing a claim of racial bias in a peremptory challenge, *id.* at 96–98, 106 S.Ct. 1712. First, the defendant must allege facts suggesting that purposeful discrimination has occurred. *Id.* at 96, 106 S.Ct. 1712. Once the defendant has made out this prima facie case, the prosecutor "must articulate a neutral explanation related to the particular case to be tried." *Id.* at 98, 106 S.Ct. 1712. "The trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Id.*

Because the record initially suggested that the trial judge erred in applying *Batson,* Judge Leonard B. Sand[1] directed a reconstruction hearing before Magistrate Judge Cheryl L. Pollak. *DeBerry v. Portuondo*, 2002 WL 31946703 (E.D.N.Y. Oct.21, 2002) ("*DeBerry II* "). At that hearing, the trial judge, New York Supreme Court Justice Edward K. Pincus, testified to the factual findings he made at trial and to his understanding and application of *Batson.* Applying the deferential standard of review imposed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), Judge Sand held that Justice Pincus reasonably applied *Batson* and that his credibility findings were entitled to deference and therefore denied the writ. *DeBerry v. Portuondo*, 277 F.Supp.2d 150 (E.D.N.Y.2003) ("*DeBerry III* "). We affirm.

## BACKGROUND

### *Proceedings in the State Courts*

A grand jury charged DeBerry and a co-defendant, Eric Jeffrey, with murder in the second degree and criminal possession of a weapon in the second and third degrees. At trial, the prosecutor, Jeff Kern, exercised three peremptory challenges to the first panel of prospective jurors without objection from defense counsel. During the first phase of the second round, Kern peremptorily challenged three additional jurors—Mr. Archibald, juror number three; Ms. Smith, juror number seven, and Ms. Buckner, juror number eight. Jeffrey's attorney, George Sheinberg, then lodged a *Batson* challenge, claiming that

---

1. Judge Sand, a judge of the United States District Court for the Southern District of New York, sat by designation in the Eastern District.

"[e]very challenge the People have taken first round and in this round have been individuals who are black." DeBerry's attorney, Michael Harrison, joined in Sheinberg's argument. Justice Pincus said, without contradiction from defense counsel, "I believe we do have black jurors."[2] The judge also noted that defendants had not challenged the peremptories that the prosecutor exercised in the first round. Sheinberg responded, "I wouldn't raise it the first challenge."

Without explicitly determining whether the defendants had established a prima facie basis for a *Batson* challenge, Justice Pincus required the prosecutor to offer a race-neutral basis for challenging each of the three jurors he excused in the second round. The prosecutor explained the challenge to Archibald as related to Archibald's age, saying that he "just wasn't comfortable having someone 20 years old judging somebody of similar age." Kern also indicated that he had kept other younger jurors on the panel. Sheinberg argued that Archibald's youth was not an appropriate basis for a challenge. Justice Pincus found the challenge to be appropriate,[3] in part, because Archibald had said that his youth would help him relate to the defendants. Sheinberg replied, "All right, how about Ms. Smith." DeBerry's attorney, Harrison, made no response. Kern conceded that Smith's law enforcement background would ordinarily make her an attractive juror for the prosecution, but he claimed that he found Smith to be "stubborn, somewhat intractable so that if I didn't convince her or she was skeptical of

any part of my case, she is the type of person that ... may actually hang up the jury." The judge again accepted Kern's proffered reason, and this time neither defense counsel offered further argument.

Kern's asserted reasons for excusing Buckner were less well defined than his reasons for excusing the first two jurors. He first said, "I am going to admit I will be hard pressed to find a reason," but added, "I didn't think her responses were as ringing as I expected." The prosecutor also explained that he had not had sufficient time to question this panel, but he declined the judge's offer to recall Buckner for further questioning. Later Kern added that Buckner was probably between forty-five and fifty, there were women on the jury in that age range, and he was trying to achieve a balanced age range. He further explained that he was just "not happy" with Buckner and argued that because the victim was African–American, he had "no motive ... to knock black people off the jury." Justice Pincus held that in light of the "articulate reasons" Kern offered for challenging Smith and Archibald, the plaintiffs had not established a pattern "with respect to [Buckner]." However, the judge also indicated that "[u]nhappiness ordinarily would not suffice" as a reason for a challenge that is alleged to be discriminatory. Neither defense counsel offered any further argument with respect to Buckner, and jury selection proceeded to a second phase of the second round.

During the second phase, Kern challenged one juror, an African–American

---

**2.** Neither Kern nor defense counsel identified the number of African–American jurors who remained on the jury. Therefore, the only record we have is the court's assertion that there were some African–American jurors.

**3.** The transcript reads: "I find that inappropriate challenge." Justice Pincus clarified at the reconstruction hearing that he found the

challenge to be appropriate, not inappropriate. The lack of grammatical felicity in the quoted language as well as the context of the statement, which included Justice Pincus's recollection that Archibald said that his youth would enable him to relate to the defendants, support the judge's claim that "inappropriate" was a typographical error.

woman, Ms. Hanson. Sheinberg, acting for Jeffrey, again lodged a *Batson* objection. This time DeBerry's attorney did not join. Justice Pincus ruled that because he had not found a pattern, he saw no basis for requiring Kern to give reasons for challenging Hanson. Sheinberg objected that a pattern had been established because "the only black person is being challenged [and] there are no other blacks on this jury." In response to a request for clarification from the judge, Sheinberg clarified that he meant no African–Americans "[o]n this selection." The judge then reiterated his ruling that a pattern had not been established. Defense counsel made no further argument.

After hearing the evidence, the jury found both defendants guilty of murder in the second degree and criminal possession of a weapon in the second degree. Justice Pincus sentenced DeBerry to a term of imprisonment of twenty-five years to life.

DeBerry appealed to the New York Supreme Court, Appellate Division, Second Department. He claimed two evidentiary errors, complained about inflammatory statements in the prosecutor's summation, argued that his sentence was excessive, and contended that Justice Pincus erred in his application of *Batson.* The Appellate Division affirmed the conviction and sentence. *See People v. DeBerry,* 234 A.D.2d 470, 651 N.Y.S.2d 559 (2d Dep't 1996) ("*DeBerry I* "). The court rejected the evidentiary and excessive sentence claims on the merits and added the following sentence: "The defendant's remaining contentions are either unpreserved for appellate review (*see, People v. Allen,* [629 N.Y.S.2d 1003 (N.Y.1995) ]; *People v. Buckley,* [552 N.Y.S.2d 912 (N.Y.1990) ] *People v. Balls,* [511 N.Y.S.2d 586 (N.Y. 1986) ] ) or are without merit." *Id.* at 560. DeBerry sought leave to appeal from Judge Titone of the New York Court of Appeals, who denied his application. 656 N.Y.S.2d 743 (N.Y.1997). Later in 1997, the trial court denied DeBerry's motion to set aside his conviction, which was made pursuant to New York Criminal Procedure Law § 440.10. In January 1998, the Appellate Division, Second Department, affirmed.

### District Court Proceedings

On April 24, 1998, DeBerry filed a habeas petition in the United States District Court for the Eastern District of New York. The petition included a *Batson* claim as well as other claims not before us on appeal. Judge Reena Raggi, who then served as a district court judge, referred the petition to Magistrate Judge Pollak for report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B).

On October 1, 2001, after appointing Richard Levitt to serve as DeBerry's pro bono counsel, Judge Pollak issued her report and recommendation. With the exception of the *Batson* claim, the magistrate judge recommended denying DeBerry's petition.

Addressing the *Batson* claim, Judge Pollak first rejected respondent's claim that the court was procedurally barred from considering the merits of the claim. The procedural bar argument rested on the Appellate Division's holding that the prosecutorial misconduct and *Batson* claims were "either unpreserved for appellate review [citing *Allen, Buckley,* and *Balls* ] or are without merit," *DeBerry I,* 651 N.Y.S.2d at 560. Respondent argued that the particular cases the Appellate Division cited indicated that it found that each of DeBerry's *Batson* claims was unpreserved for review. Judge Pollak disagreed, reasoning that it was impossible to determine which of DeBerry's *Batson* claims the state appellate court found to be unpreserved and that, if, as the prosecutor ar-

gued, the Appellate Division found that all of the *Batson* claims and the prosecutorial misconduct claim were procedurally barred, the court would not have added "or are without merit" to the procedural disposition. She therefore held that the court could consider the merits of the *Batson* challenges.

On the merits, Judge Pollak held that the state trial court committed at least three errors. First, the trial court failed to explicitly determine whether the race-neutral explanations for the challenges to Archibald and Smith were pretextual. Second, after finding that the prosecutor's explanation for excusing Buckner was insufficient, the court erred by revisiting its pattern finding and by assuming that a prima facie case could be made out only by demonstrating a pattern. Finally, the court erred by disposing of the challenge to Hanson without proceeding to the second and third *Batson* steps, requiring the prosecutor to give a race-neutral explanation and assessing the credibility of that explanation.

Having identified these errors, the magistrate judge recommended that the district court direct a reconstruction hearing at which the prosecutor's intent could be determined. She noted that both the assistant district attorney who prosecuted DeBerry and Justice Pincus were available to testify, but suggested that if the prosecutor's intent could not be reconstructed, the court should order a new trial. Finally, the magistrate judge suggested a hearing in district court rather than a remand to state court "because such a hearing may require that the trial judge be called as a witness."

Judge Sand, who replaced Judge Raggi as the assigned district court judge after her appointment to this court, adopted Judge Pollak's recommendations in their entirety and directed her to hold a reconstruction hearing to "determine the prosecutor's intent when the jury was selected." *DeBerry II*, 2002 WL 31946703, at *2. However, before the hearing was conducted, respondent notified Judge Pollak that Kern could not provide any further explanation of his challenge to Hanson.

Kern did not testify at the reconstruction hearing. Indeed, the only witness was Justice Pincus, who elaborated on his *Batson* rulings and his understanding of *Batson*. He explained that *Batson* required that challenges be "race neutral, gender neutral, sexual orientation neutral, national origin neutral" and that "in order to be a challenge, there had to be a pattern." Respondent's attorney asked whether by "pattern," the judge was referring to "the threshold prima faci[e]" showing. The judge answered that he was.

Despite Justice Pincus's understanding that an attorney could not be required to explain his challenges unless a pattern were demonstrated, his ordinary practice was to ask for an explanation as soon as the opposing attorney made a challenge. He initially followed this practice during the DeBerry–Jeffrey trial.

Justice Pincus next addressed the challenges to each juror. He testified that he believed Kern's explanation for excusing Archibald and that if he had not believed the explanation, he would have put Archibald on the jury. When Scheinberg responded "all right" after the judge indicated that the Archibald challenge was appropriate, Justice Pincus believed that Scheinberg also accepted the prosecutor's reason.

Further, the judge accepted Kern's reason for challenging Smith as "credible" and "race neutral." He believed the prosecutor both because of the reasons he gave and because "[Kern] is a well-known—was a very experienced District Attorney, very

professional, who only raised challenges when he felt there should be challenges." Justice Pincus also testified that he would have considered a further argument from defense counsel if he had made one.

In discussing Buckner, the judge testified that he had not found a pattern by the time Kern explained his sense of discomfort. He failed to find a pattern based on "the regular demographics of the jury panel" and recalled that "there were some blacks picked the first round." Despite the judge's statement that Kern's uneasiness would not ordinarily be sufficient to rebut a *Batson* challenge, he also found "Kern's explanation to be truthful as race neutral." He believed that Kern was simply unhappy with Buckner and that he wanted the jury to be balanced between different age groups. The judge also testified that even without a pattern, he would have seated Buckner if he had found Kern's explanation to be incredible. Based on Scheinberg's "all right" after the prosecutor's explanation, Justice Pincus believed that Scheinberg also accepted the prosecutor's explanation.

Justice Pincus explained that he declined to ask for reasons for the Hanson challenge because he had not found a pattern.[4] In making the determination that there was no pattern, the judge considered Kern's explanations for excusing the other jurors as well as defense counsel's failure to make any claim concerning the first round of challenges. He later defined "pattern" as "specifically rejecting jurors, challenging them ... based on race, religion, national origin or a sexual orientation."

Following the hearing, Judge Pollak recommended denial of the petition. She credited Justice Pincus's testimony that he had found the prosecutor's reasons for ex-

cusing Archibald, Smith, and Buckner to be race neutral and credible. Judge Pollak also found that petitioner failed to show by clear and convincing evidence that Justice Pincus's factual findings were erroneous or constituted an unreasonable determination of the facts. Finally, because of gaps in the record concerning the number of black jurors who were actually seated and the lack of Supreme Court precedent directly on point, the magistrate judge held that Justice Pincus had not unreasonably applied Supreme Court law when he declined to require Kern to explain his challenge to Hanson. Judge Sand thoroughly reviewed both the magistrate judge's factual findings and her conclusions of law. *See DeBerry III*, 277 F.Supp.2d 150. Like Judge Pollak, he held that Justice Pincus had made the required credibility findings concerning Kern's explanations for excusing Archibald, Smith, and Buckner. *Id.* at 158–62. Judge Sand, however, took a slightly different approach to evaluating the reasonability of Justice Pincus's treatment of the Hanson challenge. He held that it would not have been objectively unreasonable for the trial court to find that any prima facie inference of discrimination "had been dispelled" by the credible reasons offered for excusing Smith and Archibald, the judge's knowledge of Kern's general credibility, and the fact that both the victim and the defendants were African–American. *Id.* at 163 & n. 10. Finding the issues to be close, Judge Sand granted a certificate of appealability. *Id.* at 163.

DeBerry filed a timely appeal. He argues both that the state court unreasonably applied *Batson* and that its determination of the facts was unreasonable in light of the evidence. *See generally* 28

---

4. Justice Pincus also testified that he believed Mr. Angrotta, a juror whom the prosecutor did not challenge, was "a person of some color."

U.S.C. § 2254(d). In addition to defending the state court's findings and holdings, respondent argues that DeBerry's claims are procedurally barred and waived.

## DISCUSSION

### I. Procedural bar.

A habeas court may not reach a petitioner's federal claim if the judgment of the state court "rests on a state law ground that is independent of the federal question and adequate to support the judgment," *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), unless the petitioner shows cause for his default and prejudice as a result of the alleged violation of federal law, or the petitioner demonstrates a fundamental miscarriage of justice, *id.* at 746–51, 111 S.Ct. 2546. Where a decision "fairly appear[s] to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion," habeas courts presume that there is no adequate and independent state law ground supporting the judgment. *Id.* at 735, 111 S.Ct. 2546 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)).

Respondent contends that the Appellate Division held that the *Batson* argument with respect to Smith, Archibald, and Buckner was barred because DeBerry offered nothing to rebut the prosecutor's facially neutral explanations, and that the court refused to consider the argument with respect to Hanson because DeBerry did not join in his co-counsel's objection. DeBerry contests the adequacy of the pro-

cedural bar for the Archibald, Smith, and Buckner claims, arguing that *Allen*, on which the procedural bar arguably rests, is inconsistent with federal law, but he does not contest the independence or adequacy of the *Buckley* procedural ground, which allegedly bars Hanson claim. For all four jurors, he argues that the Appellate Division's reliance on procedural grounds is not clear from the face of its decision.

Reliance on an independent state procedural bar is not "clear from the face of the opinion" when a state appellate court dismisses a claim by saying, "the defendant's remaining contentions are either unpreserved for appellate review or without merit." *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (internal quotation marks and indications of alterations from the original omitted). Respondent argues that *Fama* does not save DeBerry's *Batson* claims because the cases the Second Department cited clearly demonstrate that the court relied on a procedural bar to dismiss both the *Batson* and summation claims.[5] We need not decide whether sufficiently specific citations to the law or the record in an otherwise terse "either/or" affirmance would allow us to find a clear procedural bar because the citations are not sufficiently specific in this case.

In order to assess respondent's claim that the citations in the Appellate Division opinion clearly demonstrate reliance on a procedural bar, we must address in some detail the arguments petitioner and the prosecutor made to the state appellate court as well as the appellate court's ruling. In his state court appeal, DeBerry

---

5. Alternatively, respondent contends that we must overrule *Fama* as it conflicts with *Coleman*. We see no conflict, and, in any event, we lack authority to set aside a prior holding of this court absent an intervening opinion from the Supreme Court or this court, acting en banc, that explicitly or implicitly overrules the prior holding. *Meacham v. Knolls Atomic Power Lab.*, 381 F.3d 56, 70 (2d Cir.2004).

made analytically distinct claims concerning Smith, Archibald, and Buckner, on one hand, and Hanson, on the other. With respect to the first three, he argued that the court erred by failing to judge the credibility of Kern's explanation. With respect to Hanson, petitioner argued that the state court erred by refusing to require Kern to explain his challenge.

Based on *People v. Allen,* 86 N.Y.2d 101, 629 N.Y.S.2d 1003, 653 N.E.2d 1173 (1995), the prosecutor argued that DeBerry failed to preserve his claim that the trial court erred by not judging the credibility of Kern's explanations for challenging Smith, Archibald, and Buckner. The *Allen* court held that after a prosecutor offers a facially neutral explanation for challenging a juror, the defendant must argue that the proffered reason is pretextual. *Id.* at 1008. The prosecutor also argued that DeBerry did not preserve any claim concerning Hanson because DeBerry's attorney did not join in this *Batson* challenge. For this proposition, the prosecutor cited a number of cases including *People v. Buckley,* 75 N.Y.2d 843, 552 N.Y.S.2d 912, 914, 552 N.E.2d 160 (1990), in which the court held that a defendant could not rely on his co-defendant's request to preserve an objection to the trial court's refusal to charge a lesser included offense. Alternatively, the prosecutor argued that all of the *Batson* claims failed on their merits.

■ In respondent's view, the appellate court's citation of *Allen* establishes that the court declined to consider the challenges to Smith, Archibald, and Buckner because defense counsel did not specifically question the credibility of the prosecutor's explanation. However, as the magis-

trate judge pointed out, Sheinberg, whose *Batson* objection Harrison previously had joined, did question the propriety of Kern's explanation for excusing Archibald. In addition, if the state appellate court disposed of all the *Batson* claims and the prosecutorial misconduct claim as unpreserved, there was no reason for the court to add "or . . . without merit." Thus, we agree with the magistrate judge that is "impossible to ascertain with any confidence precisely which claims the Appellate Division believed to have been disposed of by the citation to *Allen,*" and we hold that no independent and adequate state ground bars our review of the Archibald, Smith, and Buckner claims.[6] Report–Recommendation of Magistrate Judge Cheryl L. Pollak dated October 1, 2001, at 13. Having reached this conclusion, we need not determine whether the *Allen* ground is "adequate" and "independent."

The Appellate Division opinion—when read in the context of the arguments made to that court and the trial court—presents a more difficult question as to Hanson. *Buckley,* which the Second Department cited, holds that a "[d]efendant cannot rely on the request of a codefendant to preserve [a] claimed charge error" because strategic considerations may make a charge objectionable to one defendant but not to the other. 552 N.Y.S.2d at 914. It may be logical to infer that the Appellate Division intended to dispose of the Hanson argument with its citation to *Buckley* as DeBerry's counsel did not specifically join in co-counsel's objection to the Hanson peremptory challenge. Nevertheless, we conclude for two reasons that it is not clear from the face of the Appellate Division's

---

**6.** Our inability to determine which of these three claims the Appellate Division determined on the merits and which it found not to have been preserved for appellate review also creates difficulty in determining whether the claims were "adjudicated on the merits" within the meaning of AEDPA, an issue that we discuss below at [66–67]. *See* 28 U.S.C. § 2254(d).

opinion that the court rejected the Hanson claim for procedural reasons. First, the Appellate Division did not link *Buckley* to Hanson in any fashion. Second, the prosecutor offered both procedural and substantive reasons for affirming. *Cf. Coleman,* 501 U.S. at 740, 111 S.Ct. 2546 (relying on the prosecutor's arguments on a motion to dismiss to find that "the relevant state court decision does not fairly appear to rest primarily on federal law or to be interwoven with such law"). While we could draw an inference from reading the Appellate Division decision and the parties briefs that the Appellate Division relied on a procedural bar, we cannot say that its reliance is clear from the face of the opinion.

## II. Waiver.

■■■ Relying on *United States v. Rudas,* 905 F.2d 38 (2d Cir.1990), respondent also argues that DeBerry waived his claims concerning the jurors. In *Rudas,* we held that once the government offers reasons for its peremptory challenges, a federal defendant must state his continuing objection. 905 F.2d at 41. For three reasons, we reject respondent's argument that *Rudas* governs here. First, it is factually inapposite to the Smith, Archibald, and Buckner claims: DeBerry, through co-counsel, objected to the prosecutor's reason for challenging Archibald; the district court found as a matter of fact that the trial court cut off any further objection to the challenge to Smith; and Justice Pincus testified that he ruled on the credibility of the prosecutor's explanations, obviating the need for defense counsel to make a further objection. Second, respondent seeks to import a federal procedural rule into our Section 2254 review of a state court decision. However, on Section 2254 review, we rely on state, not federal, procedural rules. Thus, a waiver on which the state court did not explicitly rely will

not bar our review of the merits of a claim. *Cf. Galarza v. Keane,* 252 F.3d 630, 637 (2d Cir.2001) (rejecting contention that petitioner waived his *Batson* claim by not quarreling with the prosecutor's explanation because the state court did not explicitly rely on a procedural bar). Finally, *Rudas,* which concerned steps two and three in the *Batson* analysis, would not apply, even in a federal proceeding, to the Hanson challenge, which was resolved at step one of the *Batson* analysis. *See Rudas,* 905 F.2d at 41. Therefore, we hold that DeBerry did not waive his claims.

## III. Standard of review.

We review the district court's factual determinations for clear error and its denial of the writ de novo. *Jenkins v. Artuz,* 294 F.3d 284, 290 (2d Cir.2002). In a case governed by AEDPA, a habeas court may grant the writ "with respect to any claim that was adjudicated on the merits in State Court" only if

> the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's factual finding enjoys a "presumption of correctness" that the petitioner must rebut by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■■■ However, if a federal claim has not been adjudicated on the merits, AEDPA deference is not required. *See Miranda v. Bennett,* 322 F.3d 171, 178 (2d Cir.2003).

Absent AEDPA deference, conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo. *Oppel v. Meachum*, 851 F.2d 34, 37 (2d Cir.1988) (per curiam); *Torres v. Berbary*, 340 F.3d 63, 68 (2d Cir.2003). But, even without AEDPA-mandated deference, the state court's credibility assessment of a prosecutor's explanation for challenging a juror merits "great deference." *Hernandez v. New York*, 500 U.S. 352, 364, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *see also Washington v. Schriver*, 255 F.3d 45, 55 (2d Cir.2001) (discussing pre-AEDPA standards). Thus, in many cases it will be necessary to determine whether the state court has adjudicated a claim on the merits to determine the standard of review. Because the Appellate Division did not explain its basis for affirming the trial court on the *Batson* claims, we cannot conclude that it adjudicated those claims on the merits. Just as the Appellate Division decision does not reveal which of the four claims were not reached for procedural reasons, it does not reveal which claims were adjudicated on the merits. Therefore, we cannot hold any one of the four claims to have been adjudicated on the merits. *See Miranda*, 322 F.3d at 179 (2d Cir.2003) (holding that a "catch-all sentence stating that [petitioner's] 'remaining contentions are unpreserved for appellate review, without merit, or do not require reversal'" does not justify AEDPA deference). In *Miranda*, we distinguished an earlier decision in which we held that disjunctive language similar to that used by the Second Department established a merits-based determination on the basis that, in the earlier case, neither party claimed that there had been a procedural default and the record demonstrated that appellant preserved his challenge. *Id.* at 178 (discussing *Ryan v. Miller*, 303 F.3d 231, 246 (2d Cir.2002)).[7] In this case, neither the appellate decision nor the record makes it clear that the Appellate Division adjudicated DeBerry's *Batson* claims on the merits. Indeed, the citations suggest that the appellate court disposed of at least some of the claims for procedural reasons. Thus, pursuant to *Miranda*, we cannot find an adjudication on the merits at the Appellate Division level.

■ Despite the lack of clarity in the Appellate Division opinion, the reconstruction hearing record demonstrates that Justice Pincus adjudicated the *Batson* claims

---

**7.** In *Ryan*, we also said: "[t]here is no reason ... to doubt that AEDPA applies [to disjunctive affirmances] because the only alternative to finding the claim adjudicated on the merits would be finding the claim procedurally barred, in which case we would not have entertained the claim in the first instance (absent a showing of cause and prejudice)." 303 F.3d at 246. In isolation, this statement might suggest a broad basis for holding disjunctive affirmances to be adjudications on the merits. *Miranda*, however, properly interpreted *Ryan* in light of its particular facts. *Miranda*, 322 F.3d at 178.

Unlike the concurrence, we believe *Miranda* is fully consistent with *Fama* as well as with *Sellan v. Kuhlman*, 261 F.3d 303 (2d Cir. 2001), in which we set out a procedure for determining whether an adjudication is on the merits. *Fama* and *Miranda* are consistent because under *Fama*, we look to whether a state court has clearly expressed its reliance on a procedural ground, while, for the AEDPA adjudication-on-the-merits analysis, we look to whether a state court *actually* adjudicated the claim on the merits. It is self-evident, we believe, that a state court can fail to clearly express its reliance on a procedural basis while, at the same time, not adjudicating the claim on the merits. *Miranda* is also consistent with *Sellan* in which we set out a test for determining whether a claim was adjudicated on the merits that envisioned looking beyond the face of the state court decision to determine whether, among other things, the state court was aware of a procedural bar. 261 F.3d at 314.

on the merits. It is not clear whether an adjudication on the merits by a trial court, which is neither explicitly affirmed on the merits nor explicitly rejected by the appellate court, is sufficient to trigger AEDPA review. *Cf. Cotto v. Herbert*, 331 F.3d 217, 230–31 (2d Cir.2003) (addressing a similar issue—in a different procedural context— without deciding it). Like the *Cotto* court, we need not resolve this issue on the facts of this case. As we explain below, the trial court's rejection of the *Batson* claim concerning Smith, Archibald, and Buckner was entirely fact-based. Because the judge's credibility findings are entitled to great deference even without applying AEDPA, the distinction between AEDPA and pre-AEDPA standards is not crucial for these three claims. For slightly more complicated reasons, the applicability or not of the AEDPA standard would not alter the outcome on the Hanson claim. With regard to Hanson, the state trial court relied on its credibility findings concerning the earlier challenges to determine that no pattern had been established. To the extent that our review implicates these earlier credibility findings, we review deferentially even without AEDPA. To the extent that we must determine whether the trial judge permissibly found no pattern or prima facie case with respect to Hanson, we will review de novo if there was no adjudication on the merits. *See Oppel*, 851 F.2d at 37. Because—even applying pre-AEDPA review—we find that the district did not err in its application of *Batson*, we do not reach the *Cotto* issue.

## IV. Review of the state court adjudication.

■ As he explained at the reconstruction hearing, Justice Pincus believed Kern's explanations for challenging Archibald, Smith, and Buckner and found those challenges to be race neutral. The district court explicitly credited Justice Pincus's testimony. *DeBerry III*, 277 F.Supp.2d at 159–62. We must credit it as well unless the district court committed clear error. *See Jenkins*, 294 F.3d at 290. DeBerry identifies no basis on which we could find that the district court clearly erred, and the record in no way undermines Justice Pincus's testimony or the district court's finding. Therefore, we accept the district court's assessment.

Holding that Justice Pincus made credibility findings does not end our inquiry, we must still determine whether those findings should be set aside. In *Hernandez*, the Supreme Court explained:

> Deference to trial court findings on the issue of discriminatory intent makes particular sense ... because, as we noted in *Batson*, the finding "largely will turn on evaluation of credibility." In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."

500 U.S. at 365, 111 S.Ct. 1859 (internal citations omitted). In the context of a direct appeal from the New York Court of Appeals, the *Hernandez* Court applied a clear error standard of review to the trial court's credibility findings. *Id.* at 369, 111 S.Ct. 1859. We see no reason to apply a more stringent standard to a state court's credibility findings on habeas review.

■ Just as we found no clear error in the district court's appraisal of Justice Pincus's credibility, we find none in the

justice's assessment of Kern's credibility. This holding does not imply that the judge could not have reached a contrary decision.[8] A finding rejecting the prosecutor's explanations would have been supported by the record, including the prosecutor's acknowledgment that he kept other young jurors although he challenged Archibald because of his youth, Smith's law enforcement status, and the prosecutor's inarticulate explanation of his challenge to Buckner.[9] *DeBerry III*, 277 F.Supp.2d at 152–54. Nevertheless, all of the prosecutor's explanations were facially neutral, the victim was African–American, *id.* at 154, it appears that some African–American jurors served on the jury, *id.* at 153, and Justice Pincus was in a far better position than we to evaluate Kern's demeanor and credibility, especially in light of his long history with Kern, *id.* at 163 n. 10.[10] Similar facts caused the *Hernandez* Court to find no clear error in the trial court's credibility findings. *See Hernandez*, 500 U.S. at 369–70, 111 S.Ct. 1859 holding no clear error occurred despite the prosecutor's challenges to three and perhaps more Hispanic jurors because, among other things, the trial court could judge the prosecutor's demeanor, and the victim as well as the prosecutor's witnesses were Hispanic. Likewise, we find no clear error in Justice Pincus's credibility findings.

Justice Pincus found that no pattern had been established prior to the Hanson challenge because he credited all of the prosecutor's explanations as truthful and race neutral. As we have already explained, we must uphold the prior credibility findings. Moreover, we find no error in the judge's legal conclusion that defendants had not made out a prima facie *Batson* claim. After the judge's ruling that no pattern existed, Sheinberg argued that there was a pattern because the prosecutor had challenged the only African–American juror "[o]n this selection." Defense counsel bears the burden of articulating the basis, both factual and legal, for a *Batson* challenge. *Overton v. Newton*, 295 F.3d 270, 279 (2d Cir.2002). Here, defense counsel tacitly conceded that the prosecutor's prior challenges were no longer relevant to the prima facie showing. Hence, the trial court did not err by limiting its consideration to the challenges in the current round. Nor can we say that it erred by rejecting the argument that a prima facie claim was established by showing that one African–American juror was excused.

8. Nor do we adopt Justice Pincus's understanding of *Batson*, which at times confused "pattern" with "prima facie case" and with discriminatory intent. *See DeBerry III*, 277 F.Supp.2d at 158–59. Our task is not to determine how well the trial court could articulate its understanding of legal principles but rather whether it applied the principles correctly and avoided clear error in its findings of fact. Because Justice Pincus correctly applied *Batson* by assessing the credibility of the prosecutor's explanations and his credibility findings are not clearly erroneous, he committed no error sufficient to justify granting the writ.

9. It also appears that Kern had, in an earlier round of jury selection, challenged other Afri-

can–American jurors without complaint from defense counsel. *DeBerry III*, 277 F.Supp.2d at 152. However, because DeBerry was responsible for "articulating and developing the factual and legal grounds supporting his *Batson* challenge before the trial court," *Overton v. Newton*, 295 F.3d 270, 279 (2d Cir.2002), we attach little significance to the prior challenges, which Kern was given no opportunity to explain.

10. DeBerry contends that the district court was not entitled to weigh its prior experience with Kern in judging the credibility of his explanation. We disagree. Judging an attorney's credibility is reasonably influenced by the attorney's prior history with the court.

## CONCLUSION

For the reasons we have discussed, we affirm the judgment of the district court.

JOHN M. WALKER, Jr., Chief Judge, concurring.

I concur in Judge Pooler's opinion affirming the district court's denial of De-Berry's petition for a writ of habeas corpus. I write separately to highlight a major inconsistency in our cases that discuss the standard of review for state court habeas decisions whose grounds are unclear. In what one experienced district court judge has referred to as a "congeries of holdings," *e.g., Taus v. Senkowski,* 293 F.Supp.2d 238, 245 (E.D.N.Y.2003) (Weinstein, J.), we have wrestled with the level of deference due when the state court adjudicating habeas claims states that the "remaining contentions are either unpreserved for appellate review or are without merit." In *Fama v. Commissioner of Correctional Services,* 235 F.3d 804, 810–11 (2d Cir.2000), we held that such language failed to establish that the claims raised were procedurally barred and that therefore they were amenable to federal habeas review. *Fama,* however, did not address the question of whether the heightened deference granted under 28 U.S.C. § 2254(d) to state court adjudications on the merits applied in such situations. *See id.* (reviewing and rejecting petitioner's claims on the merits without discussing § 2254(d)).[11] In other words, *Fama* held that claims adjudicated on an "either unpreserved . . . or without merit" basis

were presumed to be preserved. This holding carried with it the implicit suggestion that such claims were presumed to have been adjudicated on the merits. However, *Fama* was silent as to whether a state court decision that was presumed to be on the merits should be given the deference that AEDPA mandates for claims that are *actually* adjudicated on the merits. *See* 28 U.S.C. § 2254(d).

We discussed the interplay between "either/or" adjudications and AEDPA deference more directly in two subsequent decisions. In *Ryan v. Miller,* 303 F.3d 231, 245–46 (2d Cir.2002), we noted that under *Fama,* adjudications made on an "either/or" basis were presumed to be preserved. We noted, furthermore, that in the particular context of Ryan's petition, neither party disputed that his claims were preserved and nothing in the state court decision indicated "that the claims were decided on anything but substantive grounds." *Id.* at 246 (internal quotation marks and citation omitted). Accordingly, we treated the state court adjudication as one "on [the] merits" and, pursuant to § 2254(d), applied AEDPA deference. *Id.*

In *Miranda v. Bennett,* 322 F.3d 171 (2d Cir.2003), however, we took a different view of the matter. There the state court had held that the "remaining contentions are unpreserved for appellate review, without merit, or do not require reversal." *Id.* at 179.[12] Under *Fama,* we should presumably have treated the claim as not procedurally barred and thus as decided on its merits. But instead, upon reviewing the

---

11. Because § 2254(d) is a provision of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"), we commonly refer to the standard mandated therein as "AEDPA deference."

12. This formulation ostensibly poses three alternatives: "[Petitioner's] remaining contentions are unpreserved for appellate review, without merit, *or do not require reversal.*"

*People v. Miranda,* 243 A.D.2d 584, 585, 665 N.Y.S.2d 507, 508 (1997) (emphasis added). But the third option suggests a decision on the merits; it implies that petitioner's claims may have had merit, but nevertheless failed to raise issues significant enough to require reversal. For the purposes of this discussion, this third option is treated as merged with the "without merit" category.

Appellate Division's opinion and the State's Memorandum to the district court, we concluded that "the record does not make it clear that either claim was rejected for lack of merit." *Id.* In other words, while the state court's language indicated that the grounds of decision were either A or B, and while *Fama* required that we presume that the grounds of decision were *not A,* in *Miranda* we were unwilling to presume that the grounds of decision were in fact B (on the merits). We therefore declined to apply AEDPA deference. *Id.*

As a matter of logic, *Miranda's* holding makes little sense. The state court says its decision is based on either A (claim unpreserved) or B (fails on the merits). *Fama* creates a presumption that where the record provides no further indication of whether it was A or B, then the habeas court should presume it is not A (the claim is not unpreserved). Logic compels the conclusion that the state court must have decided the claim on the basis of B (the claim fails on the merits). But this is precisely the conclusion that *Miranda* rejects. In short, the purpose of the *Fama* presumption is to allow courts to assume B; *Miranda* undermines that purpose by holding that courts cannot assume B either.[13] In other words, according to *Miranda,* a state court's conclusion of A or B equals neither A nor B.

But *Miranda* is not just logically inconsistent with *Fama;* it is also substantively at odds with *Fama's* approach to habeas review. *Fama* and *Ryan* recognized a choice in the "either/or" situation: either treat the claim as unpreserved or as preserved and on the merits. In refusing to

treat such claims as unpreserved and thus procedurally defaulted, *Fama* and *Ryan* allowed petitioners to avoid the near insurmountable obstacles to federal review that face procedurally defaulted claims. *See Coleman v. Thompson,* 501 U.S. 722, 730, 750, 111 S.Ct. 2546, 2554, 2564–65, 115 L.Ed.2d 640 (1991) (federal habeas review not available for procedurally defaulted claims unless petitioners shows (1) cause and prejudice, or (2) fundamental miscarriage of justice). In no sense did these two decisions suggest that the alternative was to bypass AEDPA deference altogether in favor of pre-AEDPA review. Indeed, *Ryan* explicitly held that where the state court employs "either/or" language, "[t]here is no reason to doubt that AEDPA applies . . . because the only alternative to finding the claim adjudicated on the merits would be finding the claim procedurally barred, in which case we would not have entertained [it] (absent a showing of cause and prejudice)." *Ryan,* 303 F.3d at 246. In light of that holding, and in light of the principles of comity and federalism that underlie habeas jurisprudence, *see Coleman,* 501 U.S. at 730–32, 750–51, 111 S.Ct. 2546, I find *Miranda's* adoption of a pre-AEDPA, non-deferential standard of review to be unwarranted.

Doubtless cases arise in which habeas claims may be reviewed without AEDPA deference, for example, either because the claim has not been decided on the merits and the state court's ground for dismissal is not sufficiently "independent" and "adequate," *see, e.g., James v. Kentucky,* 466 U.S. 341, 348–49, 104 S.Ct. 1830, 1835, 80 L.Ed.2d 346 (1984) (procedural rule not

---

**13.** The seeming incongruence of *Fama* and *Miranda* has not gone unnoticed. In *Shih Wei Su v. Filion,* 335 F.3d 119, 125 (2d Cir. 2003), we found it unnecessary to resolve the tension between the two cases, since the state conceded that there had been an adjudication on the merits, thus allowing us to apply AEDPA deference without dispute. The *Shih Wei*

*Su* court, however, did reflect on *Fama, Ryan,* and *Miranda,* and noted that "our cases seem to contemplate situations in which, because of uncertainty as to what the state courts have held, no procedural bar exists and yet no AEDPA deference is required." *Id.* at 126 n. 3.

firmly established or regularly followed was not independent and adequate ground); *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 457–58, 78 S.Ct. 1163, 1169–70, 2 L.Ed.2d 1488 (1958) (novel state procedural bar not independent and adequate ground), or because a properly preserved claim, recognized as such, was misconstrued by the state court and hence not decided "on the merits," *see, e.g., Chadwick v. Janecka,* 312 F.3d 597 (3d Cir. 2002) (no adjudication on merits under § 2254(d) where state court misunderstood nature of properly preserved federal claim); *Appel v. Horn,* 250 F.3d 203, 209–12 (3d Cir.2001) (same). But these situations are not presented here.

I therefore believe that *Miranda* was wrongly decided and should not be the law of this circuit. However, because the result in this case is the same whether or not AEDPA deference is accorded to the state court decision, I concur in the result reached by the majority.