Raul DELVALLE, Petitioner–
Appellant,

v.

Victor T. HERBERT, Superintendent,
Attica Correctional Facility,
Respondent–Appellee.

No. 04–4597.

United States Court of Appeals,
Second Circuit.

April 26, 2005.

Brian W. Stull, Office of the Appellate
Defender (Richard M Greenberg and Sara
Gurwitch), New York, NY, for Petitioner–
Appellant, of counsel.

Joseph N. Ferdenzi, Assistant District
Attorney, Bronx County, New York (Stan-
ley R. Kaplan and Rafael A. Curbelo, As-
sistant District Attorneys, Robert T. John-
son, District Attorney, on the brief) Bronx,
NY, for Respondent–Appellee, of counsel.

PRESENT: OAKES, STRAUB, Circuit
Judges, and HOLWELL, District Judge.*

* The Hon. Richard J. Holwell, United States
District Judge, Southern District of New York,
sitting by designation.

## SUMMARY ORDER

The issues presented on this appeal have been the subject of Opinions filed by the Supreme Court of New York, Appellate Division, First Department, and the Court of Appeals of New York, reported at *People v. Delvalle*, 248 A.D.2d 126, 670 N.Y.S.2d 827 (1st, 1998), and *People v. Delvalle*, 92 N.Y.2d 896, 680 N.Y.S.2d 60, 702 N.E.2d 845 (1998), respectively, an unreported Report and Recommendation submitted to the District Court by Magistrate Judge Henry Pitman on July 3, 2002, and an Opinion and Order issued by the District Court and reported at *Delvalle v. Herbert*, 99 Civ. 8819, 2004 U.S. Dist. LEXIS 14156, 2004 WL 1661075 (S.D.N.Y. July 23, 2004). We assume familiarity with each of these decisions.

In a *habeas* petition filed in the District Court, and on this appeal, Delvalle seeks vacatur of a judgment of conviction entered upon a jury verdict by the Supreme Court of New York, Bronx County, based on alleged violations of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The District Court declined to grant the writ and dismissed the petition. We affirm.

Jury selection in this case took place in rounds. In the first round the prosecution exercised only five peremptory challenges, each against members of the venire who were either black or hispanic. Delvalle timely objected, relying on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court agreed that a pattern of race-based challenges had been established and requested from the prosecution race-neutral justifications for each of these five challenges. In response the prosecutor stated a general preference for jurors who were educated, attentive, employed, and who bore characteristics that the prosecutor regarded as hallmarks of responsible community members, such as marriage or other family ties in the community, long-term residency in New York, and home ownership. With respect to the individual jurors challenged the prosecution asserted that each was either inattentive, underemployed, lacked substantial connections to the community, or, in one case, was employed by the New York Office of Court Administration ("OCA") and might, therefore, have additional knowledge or bias that would make him an ineffective juror.

Delvalle argued to the trial court that the reasons proffered were not supported by the responses elicited during *voir dire* and were otherwise pretextual. The trial court disagreed. Relying principally upon the prosecutor's reputation and his comportment during *voir dire*, the trial court found the prosecutor credible and denied the *Batson* challenge. Nevertheless, the trial court asked the clerk to preserve the juror cards for each of the five jurors subject to the *Batson* challenge in the event that the *Batson* issue was revisited at a later stage of jury selection.

During later rounds of *voir dire*, several jurors, who Delvalle now alleges to have been caucasian, displayed characteristics similar to those cited by the prosecutor as providing the race-neutral bases for his challenges against black and hispanic jurors in the first round. In particular, another member of the venire was an employee of the OCA. While the prosecution challenged none of these jurors, the trial court took note of the OCA employee, who was later seated on the jury, and engaged her in a colloquy relating to her knowledge of and experience with criminal law and the court system. Despite this notice, Delvalle elected not to renew his *Batson* challenge or to present to the trial court the

claim of disparate treatment that forms the foundation of this appeal.

The jury was sworn and the case was tried to verdict. Delvalle was found guilty on two counts of the indictment for second degree murder and on one count for criminal possession of a weapon. Judgment was entered and Delvalle was sentenced to a prison term of twenty-five years to life. Delvalle appealed to the New York Supreme Court, Appellate Division, First Department. There, for the first time, he cited disparate treatment of minority and white jurors as evidence that the prosecutor's race-neutral justifications for his first five peremptory challenges were pretextual. The Appellate Division unanimously affirmed petitioner's judgment of conviction, holding, *inter alia*, that "[t]he court properly determined that the prosecutor provided race-neutral nonpretextual explanations for the challenged peremptory strikes of venirepersons. The court's determinations on this subject are entitled to great deference." *People v. Delvalle*, 248 A.D.2d 126, 670 N.Y.S.2d 827, 828 (1st, 1998) (citing *People v. Hernandez*, 75 N.Y.2d 350, 356–57, 553 N.Y.S.2d 85, 552 N.E.2d 621 (1990)). Delvalle sought leave to appeal to the Court of Appeals of New York. That request was denied without published opinion. *People v. Delvalle*, 92 N.Y.2d 896, 680 N.Y.S.2d 60, 702 N.E.2d 845 (1998).

Delvalle subsequently filed in the Southern District of New York the present petition for a writ of *habeas corpus* asserting violations of his federal rights under *Batson*. That petition was referred to Magistrate Judge Henry Pitman who, by an unreported Report and Recommendation submitted on July 3, 2002, recommended denial of the petition. The District Court accepted the Report and, adopting the Recommendation, denied the petition in a written decision reported at *Delvalle v.* *Herbert*, 99 Civ. 8819, 2004 WL 1661075, 2004 U.S. Dist. LEXIS 14156 (S.D.N.Y. July 23, 2004). We assert jurisdiction under 28 U.S.C. § 1291 and affirm.

We review the District Court's denial of Delvalle's *habeas* petition *de novo*. *Kuhali v. Reno*, 266 F.3d 93, 99 (2d Cir.2001). Our review of state courts is limited, however, by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"). Under the AEDPA we will not issue a writ of *habeas corpus* "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We do not apply this deferential standard in cases where the federal claim was not adjudicated on the merits in the state courts. *See Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir.2003). In this case we are satisfied that the New York Appellate Division did reach the merits of Delvalle's *Batson* claim. We therefore afford that decision the deference it is owed under the AEDPA.

The principal basis of Delvalle's *habeas* petition is alleged disparate application of race-neutral grounds for peremptory challenges. In particular, Delvalle claims that general concerns relating to employment, education, marital status, and community ties, as well as particular concerns relating to employment by the OCA, cited as reasons for dismissing black and hispanic jurors during the first round of *voir dire*, were not applied equally to white jurors displaying the same characteristics who

appeared in later rounds. This disparate treatment, Delvalle alleges, proves that the race-neutral reasons offered by the prosecution during the *Batson* procedure were pretext and that the trial court's acceptance of those reasons was contrary to clearly established federal law. Noting that this disparate treatment argument was not made to the trial court but, rather, was raised for the first time before the Appellate Division, the District Court concluded that it was waived. This waiver provided the principal basis for the District Court's decision.

We decline to resolve this appeal in reliance on waiver. As we recently had occasion to point out, *United States v. Rudas*, 905 F.2d 38 (2d Cir.1990), and other decisions of this Court hold that defendants who make *Batson* challenges in federal court bear the burden of continuing their objections and will be barred from raising on appeal arguments not raised at trial. *DeBerry v. Portuondo*, 403 F.3d 57, 60 (2d Cir.2005). However, this is a "federal procedural rule" and "on *Section 2254* review, we rely on state, not federal, procedural rules. Thus, a waiver on which the state court did not explicitly rely will not bar our review of the merits of the claim." *Id.* The Appellate Division did not rely explicitly on waiver or procedural bar as a basis for denying Delvalle relief as to his disparate treatment arguments. Following *DeBerry*, neither will we.

Regarding the merits of Delvalle's *Batson* claim, we cannot find that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As a purely technical matter,

the procedure followed by the trial court in the face of Delvalle's *Batson* challenge was consistent with the three-step procedure described in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We see no error in the Appellate Division's finding that it was so. Furthermore, the reasons given by the prosecutor during the second phase of the procedure were facially race-neutral. We find no error in the New York courts' review in respect of this issue.

As to the trial court's review of the race-neutral justifications presented by the prosecutor, which forms the core of the present appeal, a "trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal." *Hernandez v. New York*, 500 U.S. 352, 364, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

> Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because ... the finding largely will turn on evaluation of credibility. In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.

*Id.* at 365, 111 S.Ct. 1859 (quotations omitted). The trial court, based on its observation of the prosecutor during *voir dire*, found the prosecutor credible. There was no evidence on the record before the Appellate Division that would render its affirmance of the trial court's credibility findings "unreasonable" under 28 U.S.C.

§§ 2254(d)(1) or (2). We therefore decline to grant *habeas* relief.

In reaching this holding we note that when the trial court accepted the race-neutral reasons offered by the prosecutor there was no evidence of disparate treatment. The incidents that Delvalle now claims as evidence of disparate treatment occurred in later rounds of *voir dire* after the original *Batson* challenge had been resolved. Had Delvalle called upon the trial court to reevaluate its previous ruling in light of events that occurred later in *voir dire* the trial court may well have made different findings of fact.[1] Delvalle, for reasons not part of the record before us, elected not to advance such a request before the trial court. Having failed to do so, no record was made of the relevant facts, including the racial identity of members of the venire who Delvalle now alleges were treated differently and specifics as to their individual situations. Confronted with a record so wanting we can see no error in the Appellate Division's finding that the trial court handled properly the *Batson* challenge.

We have reviewed petitioner's remaining arguments on appeal and find each of them to be without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED.

---

1. We note that the trial court, by retaining the juror cards for each of the five challenged jurors, preserved Delvalle's opportunity to revisit his *Batson* challenge. Delvalle chose not to take advantage of this opportunity. We have found no precedent to suggest that the trial court had a responsibility to *sua sponte* revisit the issue after resolving the initial *Batson* challenge, particularly given that Delvalle, for reasons of his own, may not, at later stages of the *voir dire*, have wanted the relief called for by *Batson* and its progeny.